*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0424**

Laura Barreto Renteria, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed October 20, 2014
Reversed and remanded
Hudson, Judge**

Ramsey County District Court
File No. 62-CR-11-1823

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Workman Jesness, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Hudson, Judge; and Stauber, Judge.

**U N P U B L I S H E D   O P I N I O N**

**HUDSON**, Judge

Appellant challenges the postconviction court's denial of her motion to withdraw

her guilty plea to felony theft by wrongfully obtaining public assistance, arguing that she

was not accurately advised of the immigration consequences of her plea and trial counsel provided prejudicially ineffective assistance by failing to inform her that her conviction of an aggravated felony would bar relief from deportation. Because we conclude that an evidentiary hearing is required on the allegations in appellant's motion, we reverse and remand for further consideration in the district court.

## FACTS

In 2011, the state charged appellant Laura Renteria with felony theft by wrongfully obtaining public assistance, in violation of Minn. Stat. § 256.98 (2008), alleging that she had failed to report employment to the Ramsey County Human Services Department and had received public assistance of $10,740, to which she was not entitled. Appellant, who lacks immigration status as a United States citizen or resident, pleaded guilty to the offense and signed a plea petition stating, in part, that her guilty plea "may result in deportation, exclusion from admission to the United States or denial of naturalization as a United States citizen." *See* Minn. R. Crim. P. 15.01, subd. 1(6)(l). At the plea hearing, appellant acknowledged that she received assistance benefits for a ten-month period when she failed to report all of her earned income.

Appellant's attorney questioned her on the record:

Q: Do you also understand—and this was contained in [the plea agreement], which talks about immigration consequences. Do you remember discussing that with me?
A: Yes.
Q: And you also agree that I am a criminal defense lawyer, and I explained that to you, correct?
A: Yes.
. . . .

2

Q: Okay. And I told you that by pleading guilty to this charge today, which is a felony, it will create problems for you with respect to your immigration status. You understand that?

A: Yes. Yes, I understand it.

Q: And, in fact, this plea could result in your deportation?

A: Yes, I understand it.

Q: But you wish to continue with the plea today, correct?

A: Yes.

Q: Do you need any more time to speak with an immigration attorney before we continue here today?

A: Yes.

Q: Do you need—do you want—okay.

A: Oh, I didn't understand.

Q: Do you want to speak with an immigration attorney before we proceed today?

A: Oh, no, of course not.

Q: Okay. And it's correct that at this point in time your immigration status is not that of a United States citizen or resident, correct?

A: No.

The district court accepted the plea and noted that it was understood that appellant would argue for a sentencing departure.

At appellant's sentencing hearing, appellant's attorney recalled that she was initially slated to go through a diversion program, but she did not qualify because of the amount of money involved in the theft. He stated that "[i]f the court can recall, a couple of months ago we had a lengthy chambers conversation" in which it was discussed that he would be arguing for a gross-misdemeanor, rather than a felony, disposition: "I did tell the court . . . that I would be making a pitch today for some sort of a disposition that would not necessarily be catastrophic to her immigration status." He continued:

> I'm asking the court to consider the full picture here with respect to what she did. She has taken responsibility. I'm also asking the court to consider, instead of the 15-day cap of incarceration, that she would do something more in line to what diversion would have given [her] had she been accepted;

3

which would have been community service. I think I had mentioned to the court, perhaps 50 hours of community service with a small fine given the large amount of restitution. . . . If Your Honor wants to hear more with respect to the Gross Misdemeanor and how that affects or how that plays into immigration, I can certainly do so. But, that's primarily one of the compelling reasons the court could depart with respect to disposition as opposed to a Felony.

The prosecutor stated that she did not object to the proposed disposition.

The district court found that substantial and compelling circumstances existed to sentence the matter as a gross misdemeanor, based on appellant's taking responsibility for the offense, her remorse, and her substantial responsibility regarding repayment of restitution in excess of $10,000. Appellant was sentenced to 360 days, stayed, with two years of probation and 50 hours of community service, and was ordered to pay restitution of $10,740. *See* Minn. Stat. § 609.13, subd. 1(1) (2008).

Appellant successfully completed probation. In December 2013, she moved for postconviction relief seeking to withdraw her plea, arguing that a manifest injustice had occurred because she had not received full and accurate legal advice concerning the immigration consequences of the plea under *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473 (2010). Her postconviction attorney argued that appellant's trial attorney had negotiated for a gross-misdemeanor sentence, believing that such a sentence would not affect her immigration case, but she had not been informed that wrongfully obtaining public assistance of more than $10,000 would automatically make her an aggravated felon for immigration purposes and bar any relief from deportation. The motion alleged that appellant had lived in the United States for 14 years and had three children, two of whom

4

were United States citizens, and that had she received accurate advice about the immigration consequences of her plea, she would not have pleaded guilty.

The district court held a summary hearing and denied the motion orally on the record. The district court noted that appellant had submitted no affidavit indicating that she was not guilty or that she lacked the ability to understand the plea negotiation and the seriousness of the charge. The district court stated that appellant had acknowledged that the plea would create problems with her immigration status and declined the opportunity to speak with an immigration attorney. The district court stated that it appeared that appellant's defense attorney made an extensive effort to represent his client to comply with *Padilla*, and no manifest injustice occurred. This appeal follows.

## D E C I S I O N

Appellant seeks to withdraw her guilty plea, arguing that a manifest injustice occurred because her plea was not intelligently entered, and trial counsel failed to fully inform her of the immigration consequences of her plea. *See* Minn. R. Crim. P. 15.05, subd. 1 (allowing withdrawal of a guilty plea when it is necessary to "correct a manifest injustice"). A manifest injustice exists if a guilty plea is not valid. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). To be constitutionally valid, a guilty plea must be "accurate, voluntary and intelligent." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). The requirement that a plea must be intelligent insures that the defendant understands the charges, the rights waived by pleading guilty, and the consequences of the plea. *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983).

Appellant sought to withdraw her guilty plea after sentencing in a petition for postconviction relief. *See Lussier v. State*, 821 N.W.2d 581, 583, 586 n.2 (Minn. 2012). Generally, a petition for postconviction relief may not be filed more than two years after the later of "(1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." Minn. Stat. § 590.01, subd. 4(a) (2012). This rule, however, is subject to certain exceptions. *See id.* at subd. 4(b) (2012) (listing exceptions, including if the petitioner establishes to the district court's satisfaction that "the petition is not frivolous and is in the interests of justice"). "Any petition invoking an exception provided in paragraph (b) must be filed within two years of the date the claim arises." *Id.* at subd. 4(c) (2012). For this purpose, the date "the claim arises" has been interpreted to mean "when the petitioner knew or should have known that he had a claim." *Sanchez v. State*, 816 N.W.2d 550, 560 (Minn. 2012).

The state argues that appellant's petition was time-barred for failure to satisfy the two-year time limitation in Minn. Stat. § 590.01, subd. 4, and that no statutory exceptions apply, including the interests-of-justice exception. But the supreme court has held that the exception to the two-year limitations period invoking an exception under Minn. Stat. § 590.01, subd. 4(c), is not jurisdictional, and it may be waived. *Carlton v. State*, 816 N.W.2d 590, 602, 606 (Minn. 2012). Here, because the state failed to challenge the timeliness of the petition before the district court, the state waived assertion of the two-year limitations period under Minn. Stat. § 590.01, subd. 4(c), and the district court did not err by addressing the merits of appellant's petition. *See Carlton*, 816 N.W.2d at 605

6

(stating that "it would be inconsistent with the [postconviction] statute as a whole to enforce the time limitation as a jurisdictional bar where the State has failed to assert the untimeliness of the petition").

The district court issued a substantive ruling denying appellant's petition without an evidentiary hearing. Appellate courts review the denial of evidentiary hearings on postconviction-relief petitions "for an abuse of discretion." *Hooper v. State*, 838 N.W.2d 775, 786 (Minn. 2013). We will uphold a postconviction court's factual determinations if they are supported by sufficient evidence, but we review issues of law de novo. *Leake v. State*, 737 N.W.2d 531, 535 (Minn. 2007). A postconviction court must hold an evidentiary hearing unless the petition, records, and files conclusively show that the petitioner is not entitled to relief. Minn. Stat. § 590.04, subd. 1 (2012). An evidentiary hearing is warranted if disputed material facts exist that must be resolved to determine the merits of the claim. *Powers v. State*, 695 N.W.2d 371, 374 (Minn. 2005).

Appellant argues that a manifest injustice occurred permitting plea withdrawal because her plea was not intelligent, based on trial counsel's failure to properly inform her of the immigration consequences of the plea under *Padilla v. Kentucky*. A defendant's guilty plea is constitutionally invalid if the defendant received ineffective assistance of counsel, which renders the plea unintelligent. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985); *State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994). A person seeking to establish that an attorney was ineffective must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness; and (2) a reasonable probability exists that, but for counsel's unprofessional error, the result would

7

have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064–65 (1984).

In *Padilla*, the United States Supreme Court held that the Sixth Amendment right to counsel requires counsel to give correct advice on the deportation consequence of a guilty plea when that consequence is "truly clear." *Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483. In that case, the defendant pleaded guilty to drug-distribution charges, resulting in his conviction of a "deportable" offense, which made his deportation presumptively mandatory. *Id.* at 356, 369, 130 S. Ct. at 1475, 1483. The Supreme Court held that he had satisfied the first prong of the *Strickland* test by alleging that counsel advised him prior to his plea that he "did not have to worry about immigration status since he had been in the country so long." *Id.* at 359, 130 S. Ct. at 1478 (quotation omitted). The Supreme Court therefore remanded for consideration of the second prong of the *Strickland* test. *Id.* at 374–75 , 130 S. Ct. 1487.

Here, after argument on the record, the district court made oral findings and a determination that no manifest injustice occurred justifying plea withdrawal. The district court noted appellant's statement at the plea hearing acknowledging her understanding that her plea would "create problems" with her immigration status. But as appellant notes, federal law plainly provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii) (2006). And an "aggravated felony" is defined to include any crime that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(a)(43)(M)(i) (2006). Therefore, because appellant's guilty plea resulted in her

conviction of a "deportable" offense, her deportation was not just probable, but "presumptively mandatory." *Padilla*, 559 U.S. at 356, 369, 130 S. Ct. at 1475, 1483.

"A criminal defendant who faces almost certain deportation is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know that it is a virtual certainty." *United States v. Bonilla*, 637 F.3d 980, 984 (9th Cir. 2011). Because appellant's offense fell within the category of a deportable offense, the deportation consequences of her plea were clear under federal law. And "when the deportation consequence is truly clear . . . the duty to give correct advice is equally clear." *Padilla*, 559 U.S. at 369, 130 S. Ct. at 1483. Here, trial counsel's statement that he advised appellant that her plea would "create problems" with respect to her immigration status raises a question of material fact as to whether he correctly advised her that her guilty plea would result in near-certain deportation. Further, this record raises an additional material factual issue on the intelligence of appellant's plea because it permits an inference that the parties were mutually mistaken in a belief that sentencing her offense as a gross misdemeanor, while still providing for restitution over $10,000, would not result in her conviction of a deportable offense.

Claims of ineffective assistance of counsel, which require additional evidence to determine their validity, including testimony about attorney-client communications, require an evidentiary hearing. *Robinson v. State*, 567 N.W.2d 491, 495 (Minn. 1997). Here, appellant has alleged that her attorney failed to correctly inform her of the immigration consequences of her plea and that, had she received correct advice, she would not have pleaded guilty. *See Bobo v. State*, 820 N.W.2d 511, 516 (Minn. 2012)

9

(stating that an evidentiary hearing on a postconviction claim of ineffective assistance of counsel requires the petitioner to allege facts that, if proven by a fair preponderance of the evidence, would satisfy both prongs of the *Strickland* test). "[W]e resolve any doubts about whether an evidentiary hearing is required in favor of the petitioner." *Patterson v. State*, 670 N.W.2d 439, 441 (Minn. 2003). We conclude that appellant is entitled to an evidentiary hearing on her claim of ineffective assistance of trial counsel, and we reverse and remand for the district court to conduct such a hearing. Further development of the record is also necessary for this court to fully address appellant's contention that her plea was rendered unintelligent by her failure to understand the immigration consequences of her plea. *See State v. Bowles*, 530 N.W.2d 521, 537 (Minn. 1995) (remanding for supplementation of the record where the record did not reveal facts essential to appellate review). Because we remand on these issues, we do not reach appellant's additional claim alleging ineffective assistance of postconviction counsel.

**Reversed and remanded.**