STATE of Minnesota, Respondent,

v.

Joseph Arne ECKER, Appellant.

No. C1–94–17.

Supreme Court of Minnesota.

Dec. 9, 1994.

Peter A. Cahill, Cahill Law Office, Wayzata, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Donna J. Wolfson, Asst. County Atty., Minneapolis, for respondent.

## OPINION

KEITH, Chief Justice.

On February 22, 1988, Joseph Ecker pleaded guilty to first-degree felony murder. Five years later, Ecker filed a petition for postconviction relief to withdraw his guilty plea. The district court denied this petition. Ecker argued his plea was inaccurate and lacked a sufficient factual basis because when he entered his plea he did not acknowledge an intent to kill. He also argued his plea was involuntary due to ineffective assistance of counsel, pressure and coercion. We affirm.

### I.

At 6:00 a.m. on July 18, 1987, Joseph Ecker entered the Southwest Amoco service station on University Avenue in Minneapolis, Minnesota and purchased cigarettes. Ecker immediately exited the station. Ten or fifteen minutes later, he re-entered the station armed with a semiautomatic .9 mm handgun. At the time, four employees were in the station. Two of the employees, Richard Kurowski and Michael Reinhart, were counting receipts in the cashier's area. The other two employees, Julie Rugg and Roger Reinhart (Michael Reinhart's brother), were standing and talking in the customer area.

Roger Reinhart was standing in a doorway with his back to Ecker as Ecker approached the station. Ecker raised his gun and without warning or provocation shot Roger Reinhart once in the back of the head, from a distance of 1–2 inches. Roger Reinhart fell to the floor. Neither of the two employees in the cashier's area saw Ecker fire the gun, but both heard the shot. The other employee, Julie Rugg, did see Ecker raise the gun to Roger Reinhart's head and pull the trigger. Ecker went into the customer service area and pointed the gun at the two employees in the cashier's area and demanded money. The employees complied and a surveillance camera photographed Ecker. The removal of money from the cash register triggered the camera. Ecker then exited the station and fled on foot to a getaway car driven by Michael Olson. Ecker and Olson drove toward Ecker's residence in northeast Minneapolis. The police within minutes issued a description of the shooting suspect and the getaway car over the police radio.

Minneapolis police officers proceeded directly to Ecker's residence. The description of the shooting suspect matched Ecker, whom the police suspected of several similar robberies. The police came upon Ecker and Olson in the car in an alley. The police drew their weapons, and Olson reversed the car and drove away. After a short chase, the car went out of control, stopped, and Ecker and Olson fled on foot. The police recovered from the car a handgun matching the murder weapon and marked cash taken from the store. Officers went immediately to Ecker's home, where they found him in his underwear, sweating heavily and acting very nervous. He was placed under arrest. Police found clothes matching those of the shooting suspect between two houses near Ecker's home. Roger Reinhart was pronounced dead at the hospital that same day. Cause of death was head trauma from a single gunshot wound. The police arrested the driver, Olson, the next day.

Having been in jail for two days, Ecker signed a written confession. Ecker claimed that for several days prior to the murder he had been on a binge of drugs and alcohol, including intravenous cocaine and speed.

His blood alcohol level several hours after the murder was .11. There was, however, only a trace of marijuana in his system, and no cocaine or speed was detected. Ecker admitted he robbed the service station and shot Roger Reinhart. He also admitted he knew the gun's clip was loaded. Ecker claimed, however, his accomplice, Olson, forced him to commit the robbery and tricked Ecker into believing the gun's chamber was empty. Ecker told the police he only wanted Roger Reinhart and the other station employees to hear the "click" of the hammer hitting the empty chamber. Finally, Ecker also admitted in this confession to at least seven other robberies in Hennepin and Anoka counties.

On August 12, 1987, a grand jury indictment was filed in Hennepin County District Court charging Ecker with: two counts of murder in the first degree for premeditated murder and felony murder; three counts of aggravated robbery; and three counts of assault in the second degree. Ecker appeared in court that same day, and the court appointed Richard Trachy of the Hennepin County Public Defender's Office to represent him. Scott Holdahl, another attorney with the public defender's office, volunteered to assist Mr. Trachy with Ecker's defense. Trial was set for February 22, 1988.

Ecker met with his attorneys several times over the next six months. According to his attorneys, Ecker consistently maintained throughout these meetings that he believed the gun's chamber was empty and that he did not intend to kill Roger Reinhart. Both of Ecker's attorneys advised him he would have a very difficult time convincing a jury he was innocent of first-degree murder given the overwhelming evidence against him. During this time, Ecker's co-defendant, Olson, was convicted of first-degree murder for his role in driving Ecker to and from the crime scene.

Hennepin County offered Ecker a plea bargain which required him to plead guilty to intentional felony murder and to plead guilty to the three assault and three robbery charges. Hennepin County would dismiss the first-degree premeditated murder charge and the five unrelated robbery charges. As part of the plea bargain, Anoka County would agree not to charge Ecker with the two remaining robberies in that county. Ecker would serve life in prison plus two three-year consecutive terms for the aggravated robberies of Kurowski and Michael Reinhart. The aggravated robbery of Julie Rugg would carry a three-year concurrent sentence. The three remaining assault charges would merge into the three aggravated robbery pleas.

On February 22, 1988, the first scheduled day of trial, Ecker accepted the plea bargain. Ecker's attorneys and the prosecutor questioned him extensively during his guilty plea. Judge Greenberg only briefly questioned Ecker. During questioning, Ecker claimed he could not remember pulling the trigger, although he remembered going into the gas station and robbing it. He acknowledged he was responsible for Roger Reinhart's death. He also stated several times that he believed a jury could convict him of first-degree murder based on the evidence against him. Ecker made no claim of innocence and did not indicate his plea was involuntary. He stated he was satisfied with the representation provided by his appointed counsel and waived a presentence investigation. Judge Greenberg immediately sentenced Ecker to life in prison plus six years to run consecutively with the life term. At the time of sentencing, Ecker was twenty-two years old and had completed the ninth grade.

Ecker directly appealed his sentence with the assistance of the State Public Defender's Office. The court of appeals affirmed the sentence on January 31, 1989 (CX–88–1111). This court denied review on March 31, 1989. On May 12, 1993, Ecker filed a petition for postconviction relief requesting a withdrawal of his guilty plea. The district court, Judge Greenberg again presiding, denied this motion on November 2, 1993, holding that the record contained an adequate factual basis, and that Ecker entered his plea voluntarily.

## II.

A defendant may withdraw a guilty plea after sentencing "upon a timely motion and proof to the satisfaction of the court that withdrawal of the plea is necessary to correct

a manifest injustice." Minn.R.Crim.P. 15.05, subd. 1. The petitioner seeking postconviction relief has the burden of establishing the facts alleged in the petition by a fair preponderance of the evidence. Minn.Stat. § 590.04, subd. 3 (1992). We will review the decision of the postconviction court under an abuse of discretion standard. *State v. Rainer*, 502 N.W.2d 784, 787 (Minn.1993) (citing *Gustafson v. State*, 477 N.W.2d 709, 712 (Minn.1991)). On appeal, the scope of our review is limited to the question of whether there is sufficient evidence to sustain the findings of the postconviction court. *Rainer*, 502 N.W.2d at 787; *Barness v. State*, 290 Minn. 509, 510, 187 N.W.2d 111, 112 (1971).

 Ecker's first argument is that his guilty plea to first-degree murder was inaccurate and lacked a sufficient factual basis because during his plea he failed to acknowledge an intent to kill. We have recognized three prerequisites to a valid guilty plea: it must be accurate, voluntary and intelligent (i.e., knowingly and understandingly made). *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983); *See also North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970) (a guilty plea is valid if "the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant."). An accurate plea protects the defendant from pleading guilty to a charge more serious than he or she could be convicted of were the defendant to go to trial. *Trott*, 338 N.W.2d at 251.

 A proper factual basis must be established for a guilty plea to be accurate. *Beaman v. State*, 301 Minn. 180, 221 N.W.2d 698 (1974). We have held that the trial judge need not personally interrogate the defendant prior to acceptance of a guilty plea if defense counsel and the prosecutor have established an adequate factual basis. *State v. Nelson*, 311 Minn. 109, 110, 250 N.W.2d 816, 817 (1976). It is the responsibility of the trial judge, however, to ensure that an adequate factual basis has been established in the record. *State v. Milton*, 295 N.W.2d 94, 95 (Minn.1980) (citing *State v. Hoaglund*, 307 Minn. 322, 240 N.W.2d 4 (1976)). The trial judge, therefore, should personally interrogate the defendant unless the judge is reasonably satisfied an adequate factual basis has been established. The trial judge must be particularly attentive to situations in which a defendant is pleading guilty and is asked only leading questions by counsel.

 In a typical plea, where the defendant admits his or her guilt, an adequate factual basis is usually established by questioning the defendant and asking the defendant to explain in his or her own words the circumstances surrounding the crime. *Trott*, 338 N.W.2d at 251. We have recognized, however, two unique situations in which a defendant may plead guilty without unequivocally admitting his or her guilt. First, a defendant may plead guilty to an offense, even though the defendant maintains his or her innocence, if the defendant reasonably believes, and the record establishes, the state has sufficient evidence to obtain a conviction. *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 167, 27 L.Ed.2d 162 (1970), *quoted in State v. Goulette*, 258 N.W.2d 758, 761 (Minn.1977). These pleas, commonly know as *Alford* pleas, are sometimes referred to in Minnesota as *Goulette* pleas. In *Goulette*, this court cautioned that the trial court should not "cavalierly" accept such a plea, but instead should assume its responsibility to determine whether an adequate factual basis has been established. 258 N.W.2d at 761. An adequate factual basis ensures the plea is voluntary and represents "an intelligent choice of the alternative courses of action available." *Id.* We now reiterate that caution.

 A defendant may also plead guilty even though he or she claims a loss of memory, through amnesia or intoxication, regarding the circumstances of the offense. In such cases, the record must establish that the evidence against the defendant is sufficient to persuade the defendant and his or her counsel that the defendant is guilty or likely to be convicted of the crime charged. *State v. Fisher*, 292 Minn. 453, 454, 193 N.W.2d 819, 820 (1972) (citing *Alford*, 400 U.S. at 34, 91 S.Ct. at 165); *State ex rel. Crossley v. Tahash*, 263 Minn. 299, 116 N.W.2d 666 (1962); *State ex rel. Norgaard v. Tahash*, 261 Minn. 106, 110 N.W.2d 867

(1961). Such pleas are sometimes referred to in Minnesota as *"Norgaard* pleas." As in the case of a *Goulette* plea, a trial court should accept a *Norgaard* plea with caution and must be certain the defendant understands his or her rights. Moreover, the trial court must affirmatively ensure an adequate factual basis has been established in the record.

 In the present case, Ecker argues his plea lacked a sufficient factual basis because he did not acknowledge during his guilty plea that he intended to kill Roger Reinhart. To support his argument, Ecker relies on the following exchange, which took place between Ecker and his public defender, Trachy:

Q: Do you remember everything you did that morning?

A: No.

Q: Tell us what you do remember. How much can you remember about going into that station?

A: I remember coming through the garage door, being at the counter, receiving money and as I left the side door I looked back and I seen a man laying on the fucking floor.

Q: Do you remember carrying anything in your hand as you went in?

A: A pistol.

Q: And do you remember that your purposes of going in there was to rob the store, to get some money?

A: Yes.

Q: Now, you had no purpose beforehand of walking in there and killing anybody, did you?

A: No.

\* \* \* \* \* \*

Q: So the actual shooting itself of Roger Reinhart you do not remember?

A: No.

Although Ecker claimed he neither remembered killing Roger Reinhart nor had the intent to kill him, the primary problem with Ecker's argument is that *Alford, Goulette* and *Norgaard,* and the cases that have followed, allow Ecker to plead guilty without expressing the requisite intent so long as he believed the state's evidence was sufficient to convict him. The record in this case clearly shows Ecker believed not only that the state's evidence against him was overwhelming, and a jury would probably convict him of intentional murder, but also that in all likelihood Ecker shot and killed Roger Reinhart. Ecker also acknowledged, when questioned by the county attorney, that he was aware of the conviction of Mike Olson, his co-defendant. Olson was convicted of first-degree murder for his role in driving Ecker to and from the crime scene, notwithstanding Olson's claim he had no knowledge of Ecker's intentions.

The record in this case clearly shows Ecker pleaded guilty to intentional felony murder based on his probable guilt and the likelihood a jury would convict him; therefore, Ecker's plea meets the requirements established by *Alford, Goulette, Norgaard,* and subsequent case law. Under the facts of this case, we do not believe a manifest injustice has occurred. We do, however, have several concerns regarding the plea in this case. First, we again discourage the use of leading questions to establish a factual basis. *See Shorter v. State,* 511 N.W.2d 743, 747 (Minn. 1994). The defendant should be encouraged to state in his or her own words why he or she is willing to plead guilty notwithstanding a claim of innocence or a claimed loss of memory. Second, we believe it is important for either counsel or the trial court to indicate explicitly on the record that the defendant is entering an *Alford* -type guilty plea. The defendant should be questioned directly regarding whether he or she understands the legal implications of such a plea. Finally, when a defendant is entering an *Alford* -type guilty plea, the trial judge should personally interrogate the defendant regarding why the defendant is willing to plead guilty, unless the court is reasonably satisfied defense counsel and the prosecution have established an adequate factual basis.

Clearly, in this case, an adequate factual basis was established in the record to support Ecker's plea of guilty to first-degree felony murder.

## III.

Ecker also argues his plea was involuntary due to ineffective assistance of counsel, pressure and coercion. In order for a guilty plea to be valid, it must be made voluntarily. *Trott*, 338 N.W.2d at 251. The voluntariness requirement insures the defendant is not pleading guilty because of improper pressures.

■■■■■ Ecker first argues his plea was involuntary due to ineffective assistance of counsel. When an accused is represented by counsel, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)). Appellate courts must apply a two-part standard to claims of ineffective assistance of counsel arising out of the plea process. *Id.* 474 U.S. at 57, 106 S.Ct. at 369. The defendant must first show "counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To meet this standard, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. at 2064, *quoted in Hill*, 474 U.S. at 57, 106 S.Ct. at 369. Additionally, "the defendant must show that [counsel's] deficient performance prejudiced the defense." *Id.* 466 U.S. at 687, 104 S.Ct. at 2064. A defendant establishes prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068, *quoted in Hill*, 474 U.S. at 57, 106 S.Ct. at 369. Minnesota has adopted this two-part test. *See Gates v. State*, 398 N.W.2d 558, 561 (Minn.1987).

Ecker must show with "reasonable probability" that but for the alleged errors of his counsel, he would not have pleaded guilty. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, *quoted in Gates*, 398 N.W.2d at 561. Ecker argues the alleged lack of investigation by his attorneys into possible defenses, and the failure of his attorneys to contact witnesses who could testify that Ecker normally robbed with an unloaded gun, affected his decision to plead guilty. Ecker has not shown, however, that but for these errors he would not have pleaded guilty. In *Gates*, this court held a defendant has an affirmative duty to show witnesses would have been found and their testimony would have had an actual affect on the outcome of a proceeding. 398 N.W.2d at 563. Although the court in *Gates* was addressing this issue in the context of a trial, its reasoning is directly applicable to this case. Ecker has not addressed how his alleged witnesses would have affected his decision to plead guilty; nor has he addressed the issue of whether any defense, like intoxication, was realistic or appropriate under the facts of his case.

Hennepin County had a very strong case against Ecker. The evidence, which included a written confession, eyewitness testimony, line-up identifications, surveillance photographs and numerous pieces of physical evidence, including the murder weapon, all overwhelmingly pointed to Ecker's guilt. His co-defendant, Olson, was convicted of first-degree murder for driving Ecker to and from the crime scene. By pleading guilty, Ecker would not face the premeditated murder charge and the five charged and two uncharged robberies. Ecker had confessed to all seven robberies in his written confession. When pressed by the prosecutor during the postconviction hearing, Ecker admitted his primary complaint with his plea was he was now unhappy with some of the terms of the plea agreement and wanted to have part of his life back. Ecker has failed to show with "reasonable probability" that he would have not pleaded guilty but for the errors of counsel.

■■■ Ecker also argues his plea was involuntary because his attorneys and the prosecutor coerced and pressured him into plead-

ing guilty. Ecker alleges his attorneys put pressure on him and his family for a guilty plea. He also alleges his attorneys engaged in a good guy/bad guy tactic with him to try to pressure him to plead guilty. His attorneys have denied these allegations. Ecker's sister testified at the postconviction hearing that her brother expressed dissatisfaction with his attorneys prior to his plea and that the attorneys put pressure on Ecker's family for a guilty plea. The record of the guilty plea, however, shows that Ecker repeatedly stated he was making his own decision. Under these circumstances, we do not believe the trial court abused its discretion in rejecting Ecker's claim that he was coerced by his attorneys.

Ecker further claims the prosecutor threatened that Ecker would be tried for all five of the unrelated robberies if he did not plead guilty. The county does not deny this allegation; however, a threat to prosecute fully a defendant if he or she does not plead guilty is constitutional. *See Bordenkircher v. Hayes*, 434 U.S. 357, 363–64, 98 S.Ct. 663, 667–68, 54 L.Ed.2d 604 (1978). Although the government may not produce a plea through actual or threatened physical harm, or by mental coercion "overbearing the will of the defendant," a defendant's motivation to avoid a more serious penalty or set of charges will not invalidate a guilty plea. *Brady v. United States*, 397 U.S. 742, 750–51, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747 (1970). Ecker has made no allegation he was threatened or he was the victim of mental coercion "overbearing" his will. His motivation to plead guilty in light of the overwhelming evidence against him, and the possibility of conviction on seven other robbery charges, is well supported in the record.

We hold an adequate factual basis was established to support Ecker's plea, and he entered his plea voluntarily. We affirm.