*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0548**

Otis Elliot Woodson, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 20, 2015
Affirmed
Peterson, Judge**

Ramsey County District Court
File No. 62-CR-11-3557

Cathryn Middlebrook, Chief Appellate Public Defender, Chang Lau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Kaarin Long, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Hudson, Presiding Judge; Peterson, Judge; and Larkin, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal from the district court order denying appellant's petition for postconviction relief, appellant argues that the district court erred when it found that

(1) the factual basis for his guilty plea was sufficient and (2) the guilty plea was voluntarily entered. We affirm.

## FACTS

At midnight on May 12, 2011, St. Paul police officers responded to a 911 call from a homeowner who said that he had just chased a man out of his house. When officers arrived at the house, they found appellant Otis Elliot Woodson sitting outside on the stairs. Appellant claimed that he had been drugged by an unknown person. He said that he woke up in the basement of the house but did not know how he got there.

The homeowner told police that he was eating dinner when he heard loud noises coming from the east side of the house. He went to investigate and saw appellant standing in the living room. After the homeowner twice told appellant to leave, appellant left through the front door.

On the east side of the house, police found a cut window screen. The homeowner stated that the damage was new. Also, the window-well cover for a basement window was displaced, the window screen was removed, and the window frame and glass had been pushed into the house and were on the basement floor.

Appellant was charged with one count each of first-degree burglary of an occupied dwelling, second-degree burglary, and possession of burglary or theft tools. Pursuant to a plea agreement, appellant pleaded guilty to the first-degree-burglary charge and the other charges were dismissed. For the plea's factual basis, appellant admitted entering a house without the owner's permission while the owner was present. He also admitted that he "went into that home because [he was] looking to take some items from the homeowner."

At the plea hearing, the prosecutor stated that the state would be requesting a guidelines sentence but understood that appellant would be seeking a downward dispositional departure. Appellant acknowledged that the guidelines sentence called for an executed prison term and that the district court was "not guaranteeing to do anything other than what the sentencing guidelines call for." After accepting appellant's guilty plea, the district court granted defense counsel's request to transfer appellant to Regions In-Custody Inpatient Treatment Facility to obtain treatment for his mental-health conditions, pending sentencing. Appellant was transferred to Regions, but, one week after the plea hearing, he was transferred back to the Ramsey County Adult Detention Center (ADC).

Before sentencing, appellant's counsel filed a motion to withdraw his guilty plea. But, at the sentencing hearing, appellant's counsel told the district court that appellant no longer wished to proceed with the motion to withdraw his plea and would like to proceed with sentencing. Appellant testified that he had been prescribed an antidepressant medication and an antipsychotic medication when he was at Regions, and while at the ADC, he was given only the antidepressant. Appellant stated that he was ready to move on from the ADC and that he believed he would receive better medication management in prison. The district court sentenced appellant to an executed term of 57 months in prison.

In September 2013, appellant filed a petition for postconviction relief seeking to withdraw his plea. Appellant argued that the plea was not accurate because it lacked a sufficient factual basis and was involuntary because it resulted from the improper pressure of being detained without proper medication and was improperly induced by the

promise of a dispositional departure in the form of civil commitment. Following an evidentiary hearing, the district court denied appellant's petition.

## D E C I S I O N

A defendant does not have an absolute right to withdraw a guilty plea. *State v. Raleigh,* 778 N.W.2d 90, 93 (Minn. 2010). A defendant seeking to withdraw a guilty plea after sentencing must show "that withdrawal is necessary to correct a 'manifest injustice.'" *Carey v. State*, 765 N.W.2d 396, 400 (Minn. App. 2009) (quoting Minn. R. Crim. P. 15.05, subd. 1), *review denied* (Minn. Aug. 11, 2009). Under this standard, plea-withdrawal must be permitted if the guilty plea is not valid, which depends on whether the plea was accurate, voluntary, and intelligently made. *Raleigh,* 778 N.W.2d at 94. The defendant has the burden of establishing the grounds for permitting a plea withdrawal, and the validity of a plea is a question of law, which this court reviews de novo. *Id.* This court must affirm a postconviction court's decision unless the postconviction court abused its discretion. *Bruestle v. State,* 719 N.W.2d 698, 704 (Minn. 2006).

### I.

To be accurate, a plea must be supported by an adequate factual basis. *State v. Ecker,* 524 N.W.2d 712, 716 (Minn. 1994). An adequate factual basis requires "sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted). Ultimately, it is the district court's responsibility

4

to ensure that the parties have established an adequate factual basis on the record. *Ecker*, 524 N.W.2d at 716.

A person who enters a building without consent and either intends to or does commit a crime in the building is guilty of first-degree burglary if the building is a dwelling and another person, who is not an accomplice, is present. Minn. Stat. § 609.582, subd. 1(a) (2010). Appellant argues that the factual basis for his guilty plea is insufficient to show that, when he entered the home, he intended to or did commit a crime. Respondent does not dispute that the factual basis established at the plea hearing did not show that appellant committed a crime in the home. But respondent argues that there is a sufficient factual basis to conclude that appellant intended to commit a crime while in the home.

The only question that appellant answered regarding his intent to commit a crime was the following:

> Q: And you would agree with me that you went into that home because you were looking to take some items from the homeowner; is that correct?
> A: Yes.

The crime of theft is committed when a person "intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property." Minn. Stat. § 609.52, subd. 2(a)(1) (2010). Appellant argues that because there are several definitions of the word "take" that do not "convey a permanent dispossession of property or that [he] did not originally possess a claim of

5

right to the property taken," his admission that he was "looking to take some items from the homeowner" was insufficient to prove that he intended to permanently deprive the homeowner of any property and that he did not have a claim of right to any property he meant to take.

But appellant admitted at the plea hearing that he did not have the homeowner's permission to enter the home. In that context, the district court could understand appellant's statement that he was "looking to take some items from the homeowner" to mean that appellant intended to take property without the homeowner's permission and permanently deprive the homeowner of possession. Such an understanding would be within the common meaning of "take," and, although appellant claimed that he meant something else, the postconviction court was not required to accept that claim as credible. The postconviction court did not abuse its discretion in determining that appellant did not meet his burden of establishing that his guilty plea was not accurate.

Appellant also argues that the factual basis for his guilty plea was insufficient because it was established solely by leading questions. "The district court typically satisfies the factual basis requirement by asking the defendant to express in his own words what happened. . . . Still, a defendant may not withdraw his plea simply because the court failed to elicit proper responses if the record contains sufficient evidence to support the conviction." *Raleigh*, 778 N.W.2d at 95. As we have already discussed, the record contains a sufficient factual basis to conclude that appellant committed first-degree burglary.

## II.

The voluntariness requirement insures that a guilty plea is not entered because of any "improper pressures or inducements." *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000). Whether a plea is voluntary is determined by considering all relevant circumstances. *Raleigh*, 778 N.W.2d at 94.

Appellant argues that it is apparent from the circumstances surrounding his guilty plea that he waived his trial rights only to obtain proper medical treatment for his mental illnesses and that there was ample evidence that he was not being properly treated for serious mental-health issues before he entered his plea. Appellant concludes that his plea, therefore, "was made as a result of improper pressures, rendering the plea involuntary and invalid." But when appellant was asked during the plea hearing whether he felt that he was able to make sound legal decisions and whether he felt comfortable in his mental-health status to waive his trial rights and plead guilty, he responded, "Yes."

Appellant also argues that his plea was not voluntary because it was induced by his "belief that he would be able to request not just a downward dispositional departure from the court at sentencing, but a departure with the specific result of being committed to inpatient treatment." A guilty plea cannot be induced by unfulfilled or unfulfillable promises. *Brown*, 606 N.W.2d at 674.

Although appellant indicated during the plea hearing that he would be seeking a dispositional departure, he also acknowledged that the guidelines sentence called for an executed prison term and that the district court was "not guaranteeing to do anything other than what the sentencing guidelines call for." Appellant argues that he hoped to be

7

evaluated for civil commitment, but neither the plea petition nor the transcript of the plea hearing indicates that civil commitment was to be the basis for appellant's request for a dispositional departure or that appellant was promised that he would receive a dispositional departure and be committed to a treatment facility. The postconviction court did not abuse its discretion in determining that appellant did not meet his burden of establishing that his guilty plea was not voluntary.

**Affirmed.**