*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1233**

Lynell Richard Ellison, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed February 23, 2015
Affirmed
Chutich, Judge**

Stearns County District Court
File No. 73-CR-11-9037

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Considered and decided by Rodenberg, Presiding Judge; Chutich, Judge; and Smith, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CHUTICH**, Judge

Appellant Lynell Ellison challenges the denial of his postconviction petition to withdraw his guilty plea. He argues that his plea was unintelligent because he was

unaware that his first-degree burglary charge included an assault element and that his plea was involuntary because of improper pressure and ineffective assistance from his attorney. Because the record shows that Ellison knew his first-degree burglary charge included an assault element and because his attorney's performance was not deficient, we affirm.

## FACTS

In October 2011, Ellison was charged with one count of burglary in the first degree and one count of terroristic threats. *See* Minn. Stat. §§ 609.582, subd. 1(c) (assaulting a person within the building where the burglary took place), .713, subd. 1 (threat of violence) (2010). He pleaded guilty to the first-degree burglary charge in exchange for dismissal of the charge of terroristic threats.

On January 30, 2012, the district court accepted Ellison's guilty plea and sentenced him to 58 months in prison, stayed for 20 years, which was a dispositional departure from the sentencing guidelines. On August 10, 2012, the district court executed Ellison's 58-month sentence after numerous probation violations.

On January 28, 2014, Ellison filed a petition for post-conviction relief and sought to withdraw his guilty plea. Ellison argued that his plea was not voluntary because his attorney exerted improper pressure to plead guilty and failed to advise him that assault was an underlying element of the first-degree burglary charge.

The district court denied Ellison's post-conviction petition, finding that his guilty plea was voluntary because he was advised that his burglary charge included an assault

2

element, he was not improperly pressured, and he did not receive ineffective assistance of counsel. This appeal followed.

### D E C I S I O N

We review the denial of a petition for postconviction relief for an abuse of discretion. *Ortega v. State*, 856 N.W.2d 98, 102 (Minn. 2014). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012) (quotation omitted). We review legal issues de novo, and issues of fact are reviewed to determine whether sufficient evidence in the record supports the postconviction court's findings. *Ortega*, 856 N.W.2d at 102.

To withdraw a guilty plea after sentencing, a defendant must show that withdrawal is necessary to correct a manifest injustice. Minn. R. Crim. P. 15.05, subd. 1; *see also State v. Raleigh*, 778 N.W.2d 90, 93-94 (Minn. 2010). "We have recognized that manifest injustice exists where a guilty plea is invalid." *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). A valid guilty plea must be accurate, voluntary, and intelligent. *Perkins v. State*, 559 N.W.2d 678, 688 (Minn. 1997). Here, Ellison disputes whether his plea was voluntary and intelligent.

#### A. *Voluntary*

Ellison argues that his plea was involuntary because his counsel improperly pressured him to accept the plea offer. Ellison contends that his attorney told him that he would be convicted if he went to trial and had his attorney not exerted this improper pressure, Ellison would not have pleaded guilty.

3

"To determine whether a plea is voluntary, the court examines what the parties reasonably understood to be the terms of the plea agreement." *Raleigh*, 778 N.W.2d at 96. This voluntariness requirement ensures that a defendant does not plead guilty because of improper pressure or coercion. *Id.* (citing *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983)). When a defendant consistently states on the record that the guilty plea was freely made and nothing in the record shows evidence of coercion, the defendant has not presented sufficient evidence of an involuntary plea. *State v. Ecker*, 524 N.W.2d 712, 718-19 (Minn. 1994); *see Erickson v. State*, 702 N.W.2d 892, 898 (Minn. App. 2005).

At his plea hearing, Ellison stated that he had examined the plea agreement beforehand and discussed it with his attorney. He further stated that his signature was on it, he understood it, and realized that he was forfeiting his right to a trial. The prosecutor also asked Ellison whether he was pleading guilty to get out of jail immediately, to which Ellison responded negatively.

Even though Ellison affirmed the plea agreement multiple times on the record, he contends that his plea was still involuntary because his attorney improperly pressured him to accept it. This claim is similar to one rejected in *Ecker*. Ecker argued, among other things, that his guilty plea was involuntary because his attorneys exerted improper pressure on him and his family to plead guilty. 524 N.W.2d at 719. Ecker's sister also testified that Ecker was dissatisfied with his attorneys and that they had pressured Ecker's family for the guilty plea. *Id.* The supreme court affirmed the district court's denial of Ecker's postconviction petition because Ecker repeatedly stated—on the record—that he was making his own decision. *Id.*

4

Like Ecker, Ellison repeatedly stated—on the record—that he understood the plea agreement and knew which rights he was forfeiting. And compared to Ecker, who had corroborating testimony from his sister, Ellison has presented even less evidence of improper attorney pressure. Because Ellison consistently stated on the record that his guilty plea was freely made, and nothing in the record shows evidence of improper attorney pressure, we conclude that Ellison has not presented sufficient evidence to show that his plea was involuntary.

### B. Intelligent

Ellison next argues that his plea was not intelligent because his attorney did not explain that pleading guilty to the burglary charge included an assault element. He further asserts that had he known of the assault element, he would not have pleaded guilty because the assault component disqualified him from certain programming within the department of corrections.

An intelligent guilty plea ensures that the defendant understands the charges against him, the rights to be waived, and the plea's consequences. *Raleigh*, 778 N.W.2d at 96. For a plea to be intelligent, a defendant need not be advised of every consequence; a defendant need only be advised of those direct consequences that flow definitely, immediately, and automatically from the plea. *Alanis v. State*, 583 N.W.2d 573, 578 (Minn. 1998), *abrogated on other grounds by Campos v. State*, 816 N.W.2d 480 (Minn. 2012).

The record shows that Ellison was aware that his first-degree burglary charge included an assault element. During the plea hearing, the prosecutor explicitly asked

5

Ellison whether he understood that, as part of his first-degree burglary charge, the state needed "to prove beyond a reasonable doubt that an assault was committed inside the [victim's] residence." Ellison responded affirmatively. Additionally, Ellison's complaint specifically charged him with "assault[ing] a person within the building."

Moreover, a defendant need not be advised of *every* consequence for his plea to be intelligent, only those direct consequences that flow definitely, immediately, and automatically from the plea. *Alanis*, 583 N.W.2d at 578. Ignorance of a collateral consequence does not entitle a defendant to withdraw a guilty plea. *Kim v. State*, 434 N.W.2d 263, 266-67 (Minn. 1989). Here, the availability of programming in prison was a collateral consequence of his guilty plea; the direct consequence was his probation and stayed sentence.

Ellison contends that his "difficulty admitting facts to support the assault element of the burglary charge" shows that he did not understand that assault was an included element. During the hearing, Ellison was reluctant to admit to the facts that supported the assault, and he initially denied grabbing a knife. Ellison claims that this confusion and his initial refusal to admit to picking up the knife showed that he did not understand that assault was an element of his burglary charge. But when the district court questioned Ellison further, he admitted to picking up the knife and threatening to kill the victim and then himself.

Because the record shows that Ellison understood that assault was an element of his guilty plea and that he admitted to facts supporting the assault element, his plea was intelligent.

6

## C.    *Ineffective Assistance*

Ellison also argues that he received ineffective assistance of counsel because his attorney did not explain that assault was an element of his burglary charge.   Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984), Ellison contends that his attorney had a duty to investigate the consequences of pleading guilty to first-degree burglary with assault because the assault element deprived Ellison of certain programming in prison.

If a defendant is represented, the voluntariness of the defendant's plea turns on the competence of the attorney's advice.   *Ecker*, 524 N.W.2d at 718.   To allege an ineffective-assistance-of-counsel claim based on the plea process, the defendant must show that his attorney's performance was deficient and that this deficiency prejudiced his defense.   *Id.*   To satisfy the first prong, the defendant must show that the representation fell below an objective standard of reasonableness.   *Id.*   To satisfy the second prong, the defendant must show that a reasonable probability exists that, but for counsel's errors, the proceeding would have reached a different result.   *Id.*   We review ineffective-assistance-of-counsel claims de novo.   *Opsahl v. State*, 677 N.W.2d 414, 420 (Minn. 2004).

Ellison is correct in stating that an attorney has a duty to investigate the consequences of a guilty plea under *Strickland*.   But in Minnesota, an attorney's assistance is only ineffective if the attorney fails to advise the defendant of a *direct* consequence of pleading guilty.   *See Sames v. State*, 805 N.W.2d 565, 568 (Minn. App. 2011).   A direct consequence has "'a definite, immediate and automatic effect on the

7

range of a defendant's punishment.'" *Id.* (quoting *Kaiser v. State*, 641 N.W.2d 900, 904 n.6 (Minn. 2002)).

Here, Ellison's eligibility for available programming while in prison had no definite, immediate, or automatic effect on the duration of his sentence. Because Ellison's eligibility for programming in prison was not a direct consequence of his guilty plea, *see id.*, Ellison cannot show that his attorney's performance was deficient.

Additionally, Ellison's claim of ineffective assistance of counsel also fails under the second prong. The second prong requires Ellison to show with a "reasonable probability" that he would not have pleaded guilty had his attorney informed him that his plea included an assault element. *See Ecker*, 524 N.W.2d at 718. As discussed above, the record shows that Ellison was aware that his burglary charge included an assault element: both the prosecutor and the district court thoroughly questioned Ellison about the assault element during his plea hearing, and the complaint explicitly charged him with "assault[ing] a person within the building."

In sum, because Ellison's plea was both voluntary and intelligent, the district court properly exercised its discretion in denying Ellison's postconviction appeal.

**Affirmed.**