*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1427**

State of Minnesota,
Respondent,

vs.

Eric Peter Elijio,
Appellant

**Filed April 27, 2015
Affirmed
Worke, Judge**

Lake of the Woods County District Court
File No. 39-CR-14-13

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Austed, Lake of the Woods County Attorney, Michelle E. Moren, Assistant
County Attorney, Baudette, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, F. Richard Gallo, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Peterson, Judge; and
Connolly, Judge.

**UNPUBLISHED OPINION**

**WORKE**, Judge

Appellant challenges his conviction of soliciting a child to engage in sexual
conduct, arguing that he is entitled to reversal of his *Alford* plea because he derived no

benefit from pleading guilty and the district court failed to verify that the plea was valid before accepting it.  We affirm.

## FACTS

On or about January 6, 2014, Officer Brad Thoma received reports that 40-year-old appellant Eric Peter Elijio was sending a 15-year-old female coworker text messages indicating that he wanted to be her boyfriend.  The victim's parents agreed to communicate as the victim with Elijio to determine his intent. The following text messages were exchanged:[1]

> January 6, 2014:
> Elijio:  I really and truly want to ask you something?
> . . . .
> Victim:  What do [you] need to ask[?]
> Elijio:  Do you have a boyfriend.  Because honestly you['re] such a beautiful good looking girl and [I] am very much interested.
> Victim: How old [are you?]
> Elijio:  Am 24 year[]s old beautiful
> Elijio:  Am too old for [you]?
> Victim:  I am dating . . . the one we worked with today and don't [you] have a wife and kids
> . . . .
> Elijio:  Yes I would [divorce] just for [you].  My love for [you] I'll never let go I got so much love for [you].
> . . . .
> Victim:  No just stop
>
> January 7, 2014:
> Victim:  Hey sorry [you] just [caught] me off guard but [if] [you] want to talk and don't want anyone to see the messages then we should email [because] my mom and dad check my phone. . . . [H]ere is my email . . . @yahoo.com

---

[1] Some errors have been corrected, but most of the text messages are verbatim.

Elijio: Ok am glad for that [you] makes feel so good. Am so excited to hold [you] and show [you] how much I care and love [you].

. . . .

Victim: Hey can [you] explain to me what all [you] want to do when [you] say hold me and show me how much [you] care and love me

Elijio: Honey honestly it's a long story to cut it short I want to hold [you] and squeeze [you] and make you feel[] like a real woman.

Victim: Like so by squeeze do [you] mean get me in bed [because] I am new to all this.

Elijio: Yes sweet[ie] and I would suck [you] up until sweetheart.

. . . .

Elijio: Do [you] know the price for a night [at a motel] sweet[ie]. And would [you] stay [all] night so that I rock your world sweet[ie]?

. . . .

Victim: I don't want this to be a one time night [are you] wanting to just have sex or make love to me[?] To me there is a difference [because] I've never been with a man before

Elijio: Babes this could never be a one night stand. Darlin I do love [you] deeply from the bottom of my heart. So are [you] a [virgin] then?

Victim: Yes which is why I am a little scared but very excited too please tell me [you] really w[a]nt to make love to me and not just scr[e]w me and le[a]ve me

Elijio: Honey honestly I want to make nice sweet love to [you] baby.

Victim: [Your] age doesn't bother me but I was wondering kinda does my age bother [you] hope not [because] I will be 16 at the end of the month

Elijio: Honey it bother me a bit but [you] will be sweet 16 [at the] end of the month.

. . . .

Victim: [My] friend says that Baudette motel rents by the hour for fishermen to get cleaned up so [you] can check there and let me know [then] my friend will give a ride

Elijio: Ok I will check sweetheart it seems like [you] excited and [horny] too honey?

Victim: Sweet ya I'm nervous but excited to have [you] inside me [because] this is all new to me and won't it hurt?

3

> Elijio: Darlin I do have it nice hard and sweet just for [you] honey.
>
> . . . .
>
> Victim: [D]id you get a room let me know.
>
> Elijio: I will check in a while sweet[ie] because I really want to suck your nice sweet p---y.
>
> Victim: Ok let me know when and where and time [because] I'm getting excited
>
> Elijio: Honey I will get [you] more excited when I suck [you] up honey.
>
> . . . .
>
> Elijio: [Are you] ready sweetheart because I am hard and ready. I will be going and wait [for you] by the hotel in a while.
>
> . . . .
>
> Elijio: [I]n a room sweet[ie] and what time you will be coming?
>
> Victim: [Okay what] is the room number and at 630
>
> Elijio: Room 31 sweet[ie] am waiting in it honey

The victim's parents contacted Officer Thoma after Elijio communicated that he was waiting in a hotel room. When officers arrived, Elijio agreed to talk to them, assumed why they were there, and allowed them to look through his cell phone. Officer Thoma read the messages between Elijio and the victim. Elijio admitted that he knew that the victim was 15 years old and that he was planning to have sex with her. Elijio was charged with solicitation of a child to engage in sexual conduct, in violation of Minn. Stat. § 609.352, subd. 2 (2012).

On May 21, 2014, Elijio entered an *Alford* plea. The district court accepted Elijio's guilty plea and sentenced him to 15 months in prison, stayed for five years. This appeal followed.

# DECISION

## *Alford* plea

Elijio first argues that the district court should not have accepted his *Alford* plea because he derived no benefit by pleading guilty. But the cases that Elijio cites state only that an *Alford* plea must be valid—voluntary, intelligent, and accurate. *See North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970) (stating that the standard for a valid plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant); *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994) (recognizing that a valid guilty plea must be accurate, voluntary, and intelligent); *State v. Goulette*, 258 N.W.2d 758, 760 (Minn. 1977) (holding that a district court may accept a guilty plea, though the defendant claims innocence, if it reasonably concludes that the evidence supports a guilty verdict and the plea is voluntarily, knowingly, and understandingly entered).

A plea is invalid when it is not accurate, intelligent, or voluntary. *State v. Theis*, 742 N.W.2d 643, 650 (Minn. 2007). This court reviews the validity of a guilty plea de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). Elijio asserts that without deriving a benefit, his guilty plea was not intelligently made. The intelligence requirement ensures that a defendant "understands the charges, understands the rights he is waiving by pleading guilty, and understands the consequences of his plea." *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983).

Here, Elijio agreed to plead guilty as charged, waived a presentence investigation, and agreed to a stayed 15-month sentence, with the understanding that if for some reason

5

he was not deported,[2] he would be subject to all probationary terms. Elijio's reasons for pleading guilty are unknown. Regardless of Elijio's reasons for pleading guilty, the focus is on the validity of his plea, not the benefit he gained by pleading guilty, and there is nothing in the record to indicate that his plea was not intelligently made. Elijio agreed that he understood the charge against him, that he was waiving certain constitutional rights by pleading guilty, and the consequences of his plea—his sentence and the conditions of his probation if he were not deported. *See id.* (stating that a plea is intelligent when a defendant understands the charges, the rights he is waiving, and the consequences of his plea).

**Acceptance of plea**

Elijio next argues that the district court erred by accepting his *Alford* plea without verifying the validity of the plea.

An *Alford* plea permits a defendant to plead guilty while maintaining innocence, "if the defendant reasonably believes, and the record establishes, the state has sufficient evidence to obtain a conviction." *Ecker*, 524 N.W.2d at 716 (citing *Alford*, 400 U.S. at 37, 91 S. Ct. at 167). A district court may accept an *Alford* plea "if the court, on the basis of its interrogation of the accused and its analysis of the factual basis offered in support of the plea, reasonably concludes that there is evidence which would support a jury verdict of guilty and that the plea is voluntarily, knowingly, and understandingly

---

[2] It was anticipated that Elijio would be deported to Belize after he was released to the custody of immigration.

entered." *Goulette*, 258 N.W.2d at 760. Having determined that Elijio's plea was intelligent, we will review the voluntary and accuracy requirements.

**Voluntary**

"The voluntariness requirement insures that a guilty plea is not entered because of any improper pressures or inducements." *State v. Brown*, 606 N.W.2d 670, 674 (Minn. 2000) (quotation omitted). "To determine whether a plea is voluntary, the court examines what the parties reasonably understood to be the terms of the plea agreement." *Raleigh*, 778 N.W.2d at 96. Elijio does not claim that his plea was not voluntary. He claims only that the district court failed to verify that his plea was voluntary because "many of the required questions for a felony guilty plea were not asked . . . during the plea colloquy."

Elijio did not submit a petition to enter a guilty plea. But Elijio indicated on the record that he understood (1) the plea agreement; (2) that he did not have to plead guilty and that he could have a trial before a jury made up of 12 people; (3) that the state had the burden of proving his guilt beyond a reasonable doubt and that all 12 jurors would have to return a unanimous verdict finding him guilty beyond a reasonable doubt; (4) that he had a right during trial to representation of an attorney, who would challenge the state's evidence and cross-examine its witnesses; (5) that his attorney would present a case at trial, that witnesses could testify on his behalf, and that he could testify on his own behalf but if he chose not to, no one could suggest that he was guilty because he chose to remain silent; (6) that by pleading guilty he would not have a trial and was waiving any challenges to his constitutional rights and any defenses that might be available to him; (7) that he was pleading guilty to a deportable offense and that he would be deported

7

soon after the matter was handled by the district court; and (8) that he was being charged with solicitation of a child to engage in sexual conduct.

Elijio also claims that nobody asked him if he "was fully informed as to the facts of the case or that defense counsel represented [his] interest and fully advised him." But he agreed that he had an encounter with law enforcement and understood the charge against him. He also acknowledged that after going "through the criminal complaint, police reports, and photographs of text messages" that there was a very high likelihood that he would be convicted of this charge if he had a trial. Elijio also agreed that his attorney had been representing him since the beginning of the case, that she met with him many times, that he had plenty of time to speak with her, and that he was "[v]ery much happy" with her representation.

Elijio claims that nobody asked him "if he knew he carried the presumption of innocence." But he indicated his understanding when his attorney explained that the state had the burden of proving his guilt beyond a reasonable doubt and that all 12 jurors would have to return a unanimous verdict finding him guilty beyond a reasonable doubt. Finally, Elijio asserts that nobody asked him if he was under the influence of intoxicants, has a mental disability, or was undergoing medical or psychiatric treatment. But Elijio does not claim that he was under the influence of intoxicants, had a mental disability, or was undergoing medical or psychiatric treatment when he pleaded guilty. Although these questions should have been asked, Elijio fails to show that his plea was not voluntary because he was not asked these questions.

**Accurate**

Elijio argues that the district court failed to determine that a strong factual basis existed to conclude that a jury would find him guilty. "Accuracy requires that the plea be supported by a proper factual basis, that there must be sufficient facts on the record to support a conclusion that [the] defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted). An *Alford* plea meets the accuracy requirement when it contains both a strong factual basis and the defendant's agreement that the evidence is sufficient to support a conviction. *Theis*, 742 N.W.2d at 649.

Elijio agreed that if he did not plead guilty, a jury, based on all of the evidence, would find him guilty of the charged offense. The district court accepted the complaint "as the facts as to what [Elijio was] pleading guilty." Elijio agreed that the complaint would serve as a "summary of all of the evidence that the [district court would] review . . . to determine whether Elijio would be found guilty." *See Williams v. State*, 760 N.W.2d 8, 13-14 (Minn. App. 2009) (concluding that statements in a complaint, combined with defendant's partial recollection, established strong factual basis to support plea), *review denied* (Minn. Apr. 21, 2009).

Elijio pleaded guilty to solicitation of a child to engage in sexual conduct. "A person 18 years of age or older who solicits a child or someone the person reasonably believes is a child to engage in sexual conduct with intent to engage in sexual conduct is guilty of a felony." Minn. Stat. § 609.352, subd. 2. The complaint shows that Elijio was 40 years old when he sent text messages to the 15-year-old victim whom he knew to be

9

under 16 years old. Elijio's text messages show that he solicited the victim to engage in sexual conduct. Elijio told the victim that he wanted to "make nice sweet love" to her and "suck [her] nice sweet p---y." Although Elijio denied sending text messages on January 6, he admitted that he sent messages on January 7. The record establishes a strong factual basis for Elijio's plea.

**Sufficiency of evidence**

Finally, Elijio argues that without a proper *Alford* plea, the record does not support his conviction. We have already determined that Elijio's *Alford* plea is valid; therefore, the record supports his conviction.

**Affirmed.**