*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1915**

State of Minnesota,
Respondent,

vs.

Timothy Francis Holt,
Appellant.

**Filed November 16, 2015
Affirmed
Kirk, Judge**

Dakota County District Court
File No. 19HA-CR-13-3426

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Elizabeth M. Swank, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Kirk, Presiding Judge; Johnson, Judge; and Bjorkman, Judge.

**U N P U B L I S H E D  O P I N I O N**

**KIRK**, Judge

Appellant challenges the district court's denial of his motion to withdraw his plea of guilty to two charges of second-degree criminal sexual conduct, arguing that his plea was not accurate. We affirm.

## FACTS

On October 17, 2013, respondent State of Minnesota charged appellant Timothy Francis Holt, a Liberian citizen, with two counts of second-degree criminal sexual conduct relating to incidents occurring in 2001 and 2004, respectively, and one count of pattern of harassing conduct relating back to 2001 through 2004. The statement of probable cause alleged that, in May 2012, the Apple Valley Police Department received a report that a 13-year-old child had informed a trusted adult that appellant had sexually abused her in 2004, when she was five or six years old. The child reported that appellant placed her on the bed, removed her pants, and licked her vagina with his tongue.

During the police investigation into the alleged incident, a 20-year-old female complainant came forward, alleging that appellant had sexually abused her in 2001, when she was eight or nine years old. The complainant alleged that, on one occasion, appellant entered her bedroom, pulled down her pants, and touched and licked her vagina. The complainant also described a second incident, when she was ten years old, where appellant had rubbed her vagina under her pants while she was sleeping on the floor in a sleeping bag.

On January 24, 2014, appellant entered an *Alford* plea to two counts of second-degree criminal sexual conduct in exchange for dismissal of the charge of pattern of harassing conduct and agreed-upon consecutive sentences of 21 months, stayed. Appellant also agreed on the record that he understood that in exchange for the *Alford* plea, the state would not charge him with several additional counts, including two counts of first-degree sexual conduct. Appellant signed a plea petition waiving his trial rights

2

and acknowledging that he was represented by counsel, that he had sufficient time to discuss the case and any possible defenses with his attorney, and that his attorney had represented his interests and fully advised him of his trial rights.

At the plea hearing, appellant's attorney questioned appellant about his understanding of the plea petition, and appellant agreed that he had reviewed the petition and the state's evidence with him. Appellant's attorney questioned appellant about the evidence against him and his understanding of the charges, starting with the first count of second-degree criminal sexual conduct:

> Q: Okay. So, again, directing your attention to 2001, at some point during 2001 were you in Dakota County, Minnesota?
> A: Yes.
> Q: At some point during that year you were in the [C]ity of Apple Valley, is that correct?
> A: Yes.
> Q: At some point during that year you were in the presence of a person who has been identified as victim number two, who we refer to as [T.] who now lives in Anchorage, Alaska?
> A: Yes.
> Q: That person is now 20 years of age and at the time in 2001, she was, I believe, eight years old?
> A: Yes.
> Q: At some – at that time, when she was eight years old, which obviously is under the age of 13 years you were more than 36 months older than she?
> A: Yes.
> Q: Obviously that's still true, isn't it?
> A: Yes.
> Q: At some point during 2001 you had some physical contact with her, is that correct?
> A: Yes.
> Q: The allegation[ ] that she makes is that you touched her, do you understand that?
> A: Yes.
> Q: The allegation is that you touched her in her private area, is that correct?
> A: Yes.

Q: And, specifically, you touched her vagina, is that correct?
A: Yes.
Q: You understand that this is what she reported to the police when she disclosed her allegations in 2012?
A: Yes.
Q: And you understand that that is consistent with the statement that she made within the last ten days when she had a telephone conference with the county attorney's office?
A: Yes.
Q: And you've seen the notes from that conference?
A: Yes.
Q: Now, we don't agree with everything that she says happened. We don't necessarily agree with how she says it happened, but you would agree that if that evidence was submitted to a jury, at a jury trial, there is a substantial likelihood that a jury would find that to be credible and on that basis could convict you of the offense with which you are charged?
A: Yes.

Appellant's attorney also questioned appellant regarding the evidence supporting the second count of second-degree criminal sexual conduct:

Q: Directing your attention to Count 2, that is also criminal sexual conduct in the second degree and that relates to a situation in the year 2004?
A: Yes.
Q: During that calendar year, you were at some point in Dakota County, Minnesota, is that correct?
A: Correct.
Q: At some point you were in the City of Apple Valley, is that correct?
A: Correct.
Q: At some point you were in the presence of a person who's been referred to as victim number one who is now 15 years of age?
A: Yes.
Q: That person at that time was approximately four or five years old?
A: Yes.
Q: At that time you were more than 36 months older than she was?
A: Yes.

4

Q: At some point you had some physical contact with her, is that correct?

A: Yes.

Q: You understand again from the evidence that has been submitted, consisting of both the reports from the police and her statements to the county attorney, as well as the other information that we have, that she alleges that there was a point where you had some contact with her private parts, specifically with her vagina, is that correct?

A: Yes.

Q: And you understand again, that if she testified consistent with what she's reported to the police, and she testified consistently with what she told the county attorney within the last few days as set forth in the notes that I have provided you with there is a substantial likelihood that a jury could find you guilty of that offense?

A: Yes.

Q: And part of your decision and your desire today is to take advantage of this plea agreement, is that correct?

A: Yes, sir.

Q: And on that basis, you're entering a plea of guilty as to both counts and you're asking the [c]ourt to accept those pleas, is that correct?

A: Yes.

The prosecutor also questioned appellant on the record:

Q: You understand that you're entering this as an Alford plea?

A: Correct.

Q: And do you believe based on the evidence, the jury, in applying the presumption of innocence and the requirement of proof beyond a reasonable doubt, would find you guilty in this case?

A: Yes.

The district court accepted the plea. It found on the record that based on appellant's admissions, there was sufficient evidence to support a jury verdict of guilty on both counts, and that his plea was entered voluntarily, knowingly, and intelligently.

On August 14, the district court held a sentencing hearing. Prior to sentencing, appellant's attorney stated on the record that he had learned from reading appellant's presentence investigation report that appellant was a permanent resident of the United States, and that he was likely subject to deportation to Liberia by pleading guilty to these crimes. Appellant's attorney also stated that because he failed to explain to appellant the likelihood of deportation at his plea hearing, appellant was "theoretically not given effective assistance of counsel at the time of the plea." Appellant's attorney explained that he had spoken extensively with appellant about the pros and cons of bringing a motion to withdraw his guilty plea on the ground of ineffective assistance of counsel, but appellant had advised him that he did not wish to withdraw his plea, and that he requested to proceed with sentencing.

The district court sentenced appellant to an upward departure of two consecutive 21-month sentences, stayed, a five-year conditional release term for each count, and dismissed the remaining harassment charge. The basis for the upward departure was that the offenses took place in the victims' zone of privacy, which was their home and bedrooms. The district court ordered appellant to serve 180 days in jail, with 129 days credit for time served, and up to 17 years on probation.

This appeal follows.

## DECISION

The validity of a guilty plea is a question of law, which this court reviews de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). Minn. R. Crim. P. 15.05, subd. 1, states in relevant part that "the court must allow a defendant to withdraw a guilty plea

6

upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." A guilty plea is invalid and manifestly unjust if it is not accurate, voluntary, and intelligent. *Raleigh*, 778 N.W.2d at 94.

For a guilty plea to be accurate, a proper factual basis must be established. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). A defendant who enters an *Alford* plea maintains his innocence, but pleads guilty because the record establishes, and the defendant reasonably believes, that the state has sufficient evidence to obtain a conviction. *Id.* (citing *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970)); *see also State v. Goulette*, 258 N.W.2d 758, 761 (Minn. 1977) (recognizing *Alford* pleas in Minnesota). A strong factual basis ensures that the defendant does not plead "guilty to a more serious offense than he could be convicted of were he to insist on his right to trial." *State v. Theis*, 742 N.W.2d 643, 649 (Minn. 2007) (quotation omitted). "[C]areful scrutiny of the factual basis for the plea is necessary within the context of an *Alford* plea because of the inherent conflict in pleading guilty while maintaining innocence." *Id.* at 648-49. The factual basis of an *Alford* plea is accurate when sufficient facts are "on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *State v. Iverson*, 664 N.W.2d 346, 349 (Minn. 2003) (quotation omitted).

Second-degree criminal sexual conduct is established when a perpetrator engages in sexual contact with a victim who is under 13 years of age and the perpetrator is more than 36 months older than the victim. Minn. Stat. § 609.343, subd. 1(a) (2000); *id.*, subd. 1(a) (2004). Sexual contact, as defined in section 609.341, subdivision 11(a), includes

touching a victim's vagina with the hand or mouth, and with sexual or aggressive intent. Minn. Stat. § 609.341, subd. 11(a) (2000); *id.* at subd. 11(a) (2004). Second-degree criminal sexual conduct is a specific intent crime requiring the person to act with sexual or aggressive intent. *State v. Austin*, 788 N.W.2d 788, 792-93 (Minn. App. 2010), *review denied* (Minn. Dec. 14, 2010).

Appellant first argues that the state failed to prove the intent element of the offense, namely that he acted with sexual or aggressive intent. *See* Minn. Stat. § 609.341, subd. 11(a). In *Theis*, the Minnesota Supreme Court stated that the better practice for establishing an adequate factual basis for an *Alford* plea is "based on evidence discussed with the defendant on the record at the plea hearing." 742 N.W.2d at 649. This discussion may occur through interrogation of the defendant about the underlying conduct, introduction of witness statements or abbreviated witness testimony, or stipulation to the facts. *Id.*

Here, appellant never admitted that he touched either victim with sexual or aggressive intent. But because appellant entered an *Alford* plea, he was not required to admit that he acted with specific intent while committing the crime; rather he only had to acknowledge his "probable guilt and the likelihood a jury would convict him." *See Ecker*, 524 N.W.2d at 717 (holding that an *Alford* plea allowed Ecker to plead guilty to first-degree felony murder without expressing the requisite specific intent to kill during the commission of a felony because he believed the state's evidence was sufficient to convict him). Under the prosecutor's questioning, appellant admitted on the record that he reviewed the state's evidence for both charges and he believed that there was a

8

substantial likelihood that a jury would find him guilty of each offense. *See id.* This admission of a substantial likelihood he would be found guilty is sufficient for the accuracy requirement.

Second, appellant argues that there was an insufficient factual basis for the district court to accept his *Alford* plea because, aside from the plea petition, the prosecutor did not offer any evidence to support the charges. *See Theis*, 742 N.W.2d at 649.

A review of the record shows that at the plea hearing, appellant's attorney summarized the victims' expected testimony, which the district court could rely on in accepting appellant's factual basis for the plea. *Id.* As the supreme court noted in *Theis*, summarizing a victim's likely testimony is one of the practices district courts are encouraged to follow in establishing a strong factual basis for an *Alford* plea. *Id.* Appellant agreed to his attorney's summary of the underlying facts for each offense and also agreed under questioning by both his attorney and the prosecutor that there was a substantial likelihood that he would be found guilty of both offenses if the victims consistently testified at trial.

Appellant admitted that he was accepting the plea negotiation in order to avoid more serious criminal charges. He acknowledged that he and his attorney had reviewed all of the state's evidence against him. While the district court need not have explicitly found that the accuracy requirement was satisfied, the court determined on the record that appellant's *Alford* plea was knowing, intelligent, and voluntary, and that there were sufficient facts on the record to support the plea. *See State v. Johnson*, 867 N.W.2d 210, 216 (Minn. App. 2015).

Third, appellant argues that his *Alford* plea was undermined by the fact that he was only asked leading questions at the plea hearing, and that the district court did not ask him any questions. Unless the district court is "reasonably satisfied that an adequate factual basis has been established," it should personally interrogate the defendant. *Ecker*, 524 N.W.2d at 717. The district court must be "particularly attentive" to situations where a defendant is offering an *Alford* plea, but is asked only leading questions by counsel. *Id.* at 716.

Here, the district court stated on the record that it found that there was a sufficient factual basis to accept the district court's plea, and the record contains sufficient evidence to support appellant's convictions of both charges. Moreover, appellant's guilty plea is not per se inaccurate because he provided only "yes" or "no" responses. *See Raleigh*, 778 N.W.2d at 94 ("Still, a defendant may not withdraw his plea simply because the court failed to elicit proper responses if the record contains sufficient evidence to support the conviction."). In addition, appellant was not asked compound, leading questions where it would be unclear what question he was actually answering during the plea colloquy. *See Theis*, 742 N.W.2d at 650 (indicating that a defendant's response to a compound question may be insufficient to support an *Alford* plea). The district court did not err in holding that appellant's guilty plea was accurate and supported by a strong factual basis.

**Affirmed.**