Thomas Robert SAMES, petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. A11–375.

Court of Appeals of Minnesota.

Oct. 17, 2011.

Michael E. Davis, Assistant State Public Defender, Shakopee, MN, for appellant.

Lori Swanson, Attorney General, St. Paul, MN; and Patrick J. Ciliberto, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, MN, for respondent.

Considered and decided by KALITOWSKI, Presiding Judge; JOHNSON, Chief Judge; and STONEBURNER, Judge.

## OPINION

JOHNSON, Chief Judge.

■ Thomas Robert Sames pleaded guilty to misdemeanor domestic assault. After sentencing, he moved to withdraw his guilty plea on the ground that his attorney did not advise him that pleading guilty would make him ineligible to possess a firearm. The district court denied the motion. On appeal, Sames argues that the United States Supreme Court's decision in *Padilla v. Kentucky*, — U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), which held that a defense attorney must advise his or her client of the risk of deportation following a guilty plea, should be extended to the risk of becoming ineligible to possess a firearm. We conclude that *Padilla* may not be extended in the manner urged by Sames and that an attorney does not provide constitutionally ineffective assistance of counsel by failing to advise a criminal defendant that he may become ineligible to possess a firearm if he pleads guilty to a crime. Therefore, we affirm.

## FACTS

On May 16, 2010, Scott County deputy sheriffs were dispatched to Sames's residence to investigate a report that Sames and his wife were engaged in a physical altercation. After the deputies arrived at the residence, Sames admitted to the deputies that he had slapped his wife and kicked her in the buttocks. The deputies arrested Sames, performed a pat-down search of his person, and found a small plastic bag that contained marijuana. The state charged Sames with misdemeanor domestic assault, a violation of Minn.Stat. § 609.2242, subd. 1 (2008), and petty misdemeanor possession of marijuana, a violation of Minn.Stat. § 152.027, subd. 4(a) (2008).

On October 26, 2010, Sames pleaded guilty to the charge of misdemeanor domestic assault. The district court accepted the plea and dismissed the marijuana charge. The district court stayed imposition of a sentence but placed Sames on probation for one year, with the conditions that he serve five days in jail and complete a domestic-abuse evaluation. On November 12, 2010, however, the state alleged that Sames violated the conditions of his probation by failing to appear for the domestic-abuse evaluation, and the state sought to revoke the stay of imposition.

On November 30, 2010, Sames moved to withdraw his guilty plea, arguing that he was deprived of his Sixth Amendment right to the effective assistance of counsel because his attorney failed to inform him that, if he pleaded guilty to misdemeanor domestic assault, he might become ineligible to possess a firearm. Sames's motion papers asserted that he is an avid hunter and that his hunting supplies much of his family's food. The district court denied the motion. Sames appeals.

## ISSUE

Must Sames be allowed to withdraw his guilty plea on the ground that his attorney provided ineffective assistance of counsel by failing to advise him that his plea may make him ineligible to possess a firearm?

## ANALYSIS

■ Sames argues that the district court erred by denying his motion to withdraw his guilty plea because his attorney provided him with constitutionally ineffective assistance of counsel by failing to advise him that, if he pleaded guilty to misdemeanor domestic assault, he might become ineligible to possess a firearm.

■ A defendant does not have an absolute right to withdraw a guilty plea. *State v. Raleigh*, 778 N.W.2d 90, 93 (Minn. 2010). After sentencing, a defendant may be allowed to withdraw a guilty plea only if withdrawal is necessary to correct a manifest injustice. Minn. R.Crim. P. 15.05, subd. 1. A manifest injustice exists if a guilty plea is constitutionally invalid because it is not accurate, voluntary, and intelligent. *Raleigh*, 778 N.W.2d at 94. A defendant's guilty plea may be constitutionally invalid if the defendant received ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *State v. Ecker*, 524 N.W.2d 712, 718 (Minn.1994). To prevail on a claim of ineffective assistance of counsel, a defendant must prove, first, that counsel's performance was deficient because it "fell below an objective standard of reasonableness" and, second, that the defendant was prejudiced by his counsel's deficient performance because "a reasonable probability exists that, but for counsel's errors, the outcome would have been different." *Staunton v. State*, 784 N.W.2d 289, 300 (Minn.2010) (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2065, 2068, 80 L.Ed.2d 674

(1984)). The "objective standard of reasonableness" is the " 'representation by an attorney exercising the customary skills and diligence that a reasonably competent attorney would perform under similar circumstances.' " *State v. Bobo*, 770 N.W.2d 129, 138 (Minn.2009) (quoting *State v. Gassler*, 505 N.W.2d 62, 70 (Minn.1993)).

Sames contends that his attorney's assistance was objectively unreasonable because his attorney did not advise him that pleading guilty to misdemeanor domestic assault might make him ineligible to possess a firearm. The district court rejected this argument on the ground that the loss of the right to possess a firearm is a collateral consequence of a guilty plea. The district court's reasoning derives from *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), in which the United States Supreme Court stated that a defendant's guilty plea is voluntary if the defendant is "fully aware of the direct consequences" when entering the plea. *Id.* at 755, 90 S.Ct. at 1472 (quotation omitted). The federal circuit courts have interpreted this statement in *Brady* to imply that a guilty plea is voluntary if a defendant lacks awareness only of the *collateral* consequences of a guilty plea. The leading case is *United States v. Sambro*, 454 F.2d 918 (D.C.Cir.1971), in which the court stated, "We presume that the Supreme Court meant what it said when it used the word *'direct'*; by doing so, it excluded *collateral* consequences." *Id.* at 922. Other federal circuit courts have adhered to this rationale. *See, e.g., Steele v. Murphy*, 365 F.3d 14, 17 (1st Cir.2004); *Wilson v. McGinnis*, 413 F.3d 196, 199 (2d Cir.2005); *Virsnieks v. Smith*, 521 F.3d 707, 715–16 (7th Cir.2008).

■ The Minnesota courts have followed the federal courts in making a distinction between direct consequences and collateral consequences when determining

whether a guilty plea is valid or invalid. The supreme court has explained that a guilty plea is valid if a defendant is aware of the direct consequences of pleading guilty. *Kaiser v. State,* 641 N.W.2d 900, 903–04 (Minn.2002). But "[i]gnorance of a collateral consequence does not entitle a criminal defendant to withdraw a guilty plea." *Id.* at 904 (quotation omitted). Direct consequences are those that have "a definite, immediate and automatic effect on the range of a defendant's punishment." *Id.* at 904 n. 6. Collateral consequences, on the other hand, "are not punishment" but, rather, "are civil and regulatory in nature and are imposed in the interest of public safety." *Id.* at 905 (classifying sex-offender registration as collateral consequence); *see also State v. Washburn,* 602 N.W.2d 244, 246 (Minn.App.1999) (classifying revocation of driving privileges following DWI conviction as collateral consequence).

The distinction between direct consequences and collateral consequences is relevant not only to the requirements of a valid guilty plea but also to the Sixth Amendment right to effective assistance of counsel. Most federal circuit courts and numerous state appellate courts have held that an attorney's representation does not fall below the objective standard of reasonableness required by the Sixth Amendment if the attorney fails to inform a defendant of the collateral consequences of a guilty plea. *See* Gabriel J. Chin & Richard W. Holmes, Jr., *Effective Assistance of Counsel and the Consequences of Guilty Pleas,* 87 Cornell L. Rev. 697, 706–08 (2002) (collecting cases). Minnesota is among the states in which the direct-collateral distinction is used to determine the scope of an attorney's duties to his or her client. In a case concerning the risk of deportation, the supreme court first rejected the appellant's argument that his plea was invalid because it was not intelligent, and then rejected the appellant's ineffec-

tiveness argument on essentially the same grounds: "because as a collateral consequence of the guilty plea, his attorney was under no obligation to advise him of the deportation possibility . . ., the failure to so inform him could not have fallen below an objective standard of reasonableness as required by *Strickland*." *Alanis v. State,* 583 N.W.2d 573, 578–79 (Minn.1998); *see also Berkow v. State,* 583 N.W.2d 562, 563–64 (Minn.1998) (following *Alanis* ).

We are bound to follow the analytical framework of the above-described caselaw, which relies on the distinction between direct consequences and collateral consequences, both for purposes of ensuring that a guilty plea is entered consistent with due process of law and for purposes of the Sixth Amendment right to the effective assistance of counsel. The applicable caselaw requires us to ask whether a particular consequence of a guilty plea is a direct consequence or a collateral consequence. With respect to the risk of becoming ineligible to possess a firearm, this court has answered the question by holding that such a risk is a collateral consequence of a guilty plea. *State v. Rodriguez,* 590 N.W.2d 823, 825 (Minn.App. 1999), *review denied* (Minn. May 26, 1999). Our holding in *Rodriguez* was reinforced by the supreme court's subsequent *dictum* that the "loss of the right to possess a firearm following the conviction of violent felonies" is a "collateral, not direct, consequence[ ] of the sentence[ ] imposed." *Kaiser,* 641 N.W.2d at 905 (holding that sex-offender registration requirement is collateral consequence). The collateral nature of becoming ineligible to possess a firearm following a guilty plea has been recognized by other courts as well, apparently without disagreement. *See Rodriguez,* 590 N.W.2d at 825 (citing cases); *see also United States v. Amerson,* 599 F.3d 854, 855–56 (8th Cir.2010) (citing cases).

The determination that the risk of becoming ineligible to possess a firearm is a collateral consequence of a guilty plea is essentially determinative of Sames's claim. Because the risk of becoming ineligible to possess a firearm is a collateral consequence of a guilty plea, Sames's attorney had no duty to advise him of that consequence. *See Alanis*, 583 N.W.2d at 579; *Berkow*, 583 N.W.2d at 563–64.

Sames urges this court to apply *Padilla v. Kentucky*, —— U.S. ——, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), in which the United States Supreme Court considered a post-conviction claim that Padilla was denied his right to the effective assistance of counsel because his attorney failed to advise him that his guilty plea to a drug-related offense placed him at risk of deportation. *Id.* at 1477–78. The Court held that "counsel must inform her client whether his plea carries a risk of deportation." *Id.* at 1486. In so holding, the Court recognized that deportation is "intimately related to the criminal process" and is "nearly an automatic result" of criminal convictions. *Id.* at 1481. The Court noted Congress's gradual abrogation of judicial and administrative discretion in the matter of deportation. *Id.* at 1478–80. The Court also emphasized the seriousness of deportation, characterizing it as " 'the equivalent of banishment or exile.' " *Id.* at 1486 (quoting *Delgadillo v. Carmichael*, 332 U.S. 388, 390–91, 68 S.Ct. 10, 12, 92 L.Ed. 17 (1947)).

Sames's argument is not without logic. As with the risk of deportation, the risk of becoming ineligible to possess a firearm may be seen as "intimately related to the criminal process" and perhaps is "nearly an automatic result" of some criminal convictions. *See id.* at 1481. Likewise, a subsequent prosecution for unlawful possession of a firearm may frequently arise due to the number of federal and state criminal offenses that may make a person ineligible to possess a firearm. *See* 18 U.S.C. § 922(g) (2006); Minn.Stat. § 624.713, subd. 1 (2010).[1] Just as the "law has enmeshed criminal convictions and the penalty of deportation," *Padilla*, 130 S.Ct. at 1481, it appears that the same is true of criminal convictions and the right to possess a firearm. Furthermore, the right to possess a firearm is an important and fundamental right that is protected by the Bill of Rights. *See* U.S. Const. Amend. II; *McDonald v. City of Chicago*, —— U.S. ——, 130 S.Ct. 3020, 3036–42, 177 L.Ed.2d 894 (2010); *District of Columbia v. Heller*, 554 U.S. 570, 593–95, 128 S.Ct. 2783, 2798–99, 171 L.Ed.2d 637 (2008). Nonetheless, there are countervailing reasons to limit *Padilla* to the context of deportation. The *Padilla* Court did not discuss—indeed, did not even mention—any of the other myriad consequences of a

---

1. Sames contends that his conviction makes him ineligible to possess a firearm under a federal statute, 18 U.S.C. § 922(g)(9) (2006), and a state statute, Minn.Stat. § 609.2242, subd. 3(d) (2010). The state statute makes a person ineligible to possess a "pistol." Minn. Stat. § 609.2242, subd. 3(d). The ineligibility is limited to a period of three years, if the person does not have any subsequent convictions. *Id.* The federal statute makes a person ineligible to possess "any firearm," 18 U.S.C. § 922(g), unless the person "has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)," 18 U.S.C. § 921(a)(33)(B)(ii) (2006). Under Minnesota law, a criminal offender's civil rights are restored when a conviction is discharged, Minn. Stat. § 609.165, subd. 1 (2010), which may occur "upon expiration of sentence," Minn. Stat. § 609.165, subd. 2(2) (2010). In this case, Sames would have discharged his conviction in one year, if his probation were not revoked. The record before this court does not reflect whether the district court revoked Sames's probation or whether the district court imposed an executed sentence.

guilty plea. Rather, the Court focused on "the unique nature of deportation." *Padilla,* 130 S.Ct. at 1481. Our research indicates that, since the *Padilla* opinion was issued, the lower federal courts have not applied its holding to the risk of becoming ineligible to possess a firearm. Thus, we do not interpret *Padilla* to hold that an attorney must, to satisfy the objective standard of reasonableness, advise a defendant that, if the defendant pleads guilty, the defendant may become ineligible to possess a firearm.

More generally, Sames also urges this court to disregard the distinction between direct consequences and collateral consequences. Indeed, the United States Supreme Court never has used the distinction as a means of "defin[ing] the scope of constitutionally 'reasonable professional assistance' required under *Strickland.*" *Id.* Furthermore, the *Padilla* Court cast doubt on the distinction by stating, "Whether that distinction is appropriate is a question we need not consider in this case because of the unique nature of deportation." *Id.* But the Court did not clearly state that the direct-collateral distinction should not be applied in cases not involving the risk of deportation. In the absence of such a statement, we are obligated to follow the precedent that binds us on that issue. That precedent is found, as discussed above, in *Alanis* and *Berkow,* which held that the direct-collateral distinction determines the scope of an attorney's duties (at least in cases not involving the risk of deportation), and *Rodriguez,* which held that the risk of becoming ineligible to possess a firearm is a collateral consequence of a guilty plea. If a differ-

ent interpretation of a criminal defendant's Sixth Amendment rights is appropriate at this time, it would be the role of the supreme court, not this court, to revisit settled caselaw. *See Minnesota State Patrol Troopers Ass'n ex rel. Pince v. State, Dep't of Pub. Safety,* 437 N.W.2d 670, 676 (Minn. App.1989), *review denied* (Minn. May 24, 1989).

For the foregoing reasons, we conclude that Sames's attorney's representation did not fall below an objective standard of reasonableness despite the attorney's failure to advise him that pleading guilty to misdemeanor domestic assault might make him ineligible to possess a firearm. In light of that conclusion, we need not analyze the second prong of the *Strickland* test, which asks whether Sames was prejudiced by his attorney's allegedly deficient representation. *See Staunton,* 784 N.W.2d at 300.

## DECISION

Sames's attorney did not provide ineffective assistance of counsel by failing to advise Sames that he might become ineligible to possess a firearm if he pleaded guilty to misdemeanor domestic assault. Therefore, the district court did not err by denying Sames's motion to withdraw his guilty plea.

**Affirmed.**