*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0295**

Jaime Marquez Guevara, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed January 19, 2016
Reversed and remanded
Halbrooks, Judge**

Nobles County District Court
File No. 53-CR-12-1149

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Kathleen A. Kusz, Nobles County Attorney, Matthew Loeffler, Assistant County
Attorney, Worthington, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Halbrooks, Judge; and Chutich,
Judge.

**U N P U B L I S H E D   O P I N I O N**

**HALBROOKS**, Judge

Appellant challenges the postconviction court's denial of his petition to withdraw

his guilty plea based on his claim of ineffective assistance of counsel. Appellant argues

that the postconviction court should have allowed him to withdraw his guilty plea because it was involuntary due to his former attorney's failure to properly advise him of the immigration consequences of his guilty plea according to the standard set in *Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S. Ct. 1473, 1483 (2010).  Because we conclude that his former attorney provided ineffective assistance and that appellant was prejudiced by the ineffective assistance, we reverse the postconviction court's decision and remand for withdrawal of his guilty plea.

**FACTS**

On November 15, 2012, appellant Jaime Guevara was arrested for an alleged domestic assault against M.C.  The state charged Guevara with misdemeanor domestic assault under Minn. Stat. § 609.2242, subd. 1 (2012).  On July 23, 2013, Guevara, who was represented, entered into a written plea agreement to plead guilty to that charge.

Before accepting his guilty plea, the district court asked Guevara, "Well, do you understand this conviction could result in your deportation, denial of readmission to the United States, or denial of naturalization?"  Guevara replied, "Probably, yes."  The district court reiterated, "Well, do you understand that's what will happen, what could possibly happen?"  Guevara responded, "Yes, I understand that that could happen."

The plea petition included the following statement about possible deportation consequences: "I understand that if I am not a citizen of the United States, my plea of guilty to this crime may result in deportation, exclusion from admission to the United States or denial of naturalization as a United States citizen."  The district court accepted Guevara's plea and sentenced him to supervised probation, with the conditions of paying

2

a $582 fine, completing a domestic-violence assessment and following all recommendations, following probationary rules, and otherwise remaining law-abiding.

Approximately one year later, Guevara obtained new counsel and petitioned for postconviction relief. In his petition, Guevara argued that his plea was not accurate, voluntary, or intelligent because he received ineffective assistance of counsel. Specifically, Guevara stated that he was not informed by his former attorney that if he pleaded guilty to a crime involving domestic violence, his deportation would become presumptively mandatory. The postconviction court held an evidentiary hearing to develop the factual basis for the petition.

During the hearing, his former attorney testified that he uses a "canned" speech with his clients, including Guevara, to inform them that they "could" be deported as a result of a conviction. He indicated that the speech is based in large part on the language from the plea petition. He acknowledged that he did not inform Guevara that the misdemeanor domestic-assault conviction would make deportation presumptively mandatory.

Guevara also testified at the hearing. He stated that he was not informed that the conviction made deportation presumptively mandatory. But he subsequently faced immigration consequences as a result of his conviction. Guevara's immigration attorney told him that there was little that the attorney could do to help him because of the domestic-assault conviction. Finally, Guevara testified that had he been advised of the deportation consequences, he would not have pleaded guilty.

3

The postconviction court denied Guevara's petition. While the postconviction court determined that Guevara had received ineffective assistance from his trial counsel, it concluded that Guevara had failed to demonstrate that he had been prejudiced by his counsel's ineffective representation. In its order, the postconviction court stated that the federal immigration statute[1] "very clearly" made a domestic-violence conviction a "deportable offense." Thus, "[Guevara's former attorney] was likely obligated to inform [Guevara] of the specific immigration consequences (i.e. deportation) related to pleading guilty to a domestic violence crime."

But in addressing the second prong of an ineffective-assistance-of-counsel analysis, the postconviction court determined that Guevara had not demonstrated that he had been prejudiced because Guevara could be subject to immigration proceedings for "a variety of reasons" and stated that it "[could not] base its Order in this case on speculation." The postconviction court noted that Guevara's testimony indicated that he could be facing immigration proceedings under a different statute that "does not directly link a conviction for a particular crime with a mandatory deportation." As a result, the postconviction court concluded that "due to the lack of certainty and clarity about" the consequences of his attorney's failure to advise him about the immigration issues, Guevara had not met his burden of proof with respect to the prejudice prong. This appeal follows.

---

[1] The statute referred to is 8 U.S.C. § 1227(a)(2)(E)(i) (2012), which states, "Any alien who at any time after admission is convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment is deportable."

4

## DECISION

We review claims of ineffective assistance of counsel de novo. *Opsahl v. State*, 677 N.W.2d 414, 420 (Minn. 2004). "A defendant does not have an absolute right to withdraw a guilty plea." *Sames v. State*, 805 N.W.2d 565, 567 (Minn. App. 2011). But the district court "must allow a defendant to withdraw a guilty plea [if] necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. "A manifest injustice exists if a guilty plea is constitutionally invalid because it is not accurate, voluntary, and intelligent." *Sames*, 805 N.W.2d at 567.

"In order for a guilty plea to be valid, it must be made voluntarily." *State v. Ecker*, 524 N.W.2d 712, 718 (Minn. 1994). Ineffective assistance of counsel renders a guilty plea involuntary. *Sames*, 805 N.W.2d at 567. "When an accused is represented by counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Ecker*, 524 N.W.2d at 718 (quotations omitted). A two-part standard applies to Guevara's claim of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). First, Guevara must demonstrate that his counsel's "representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S. Ct. at 2064. Second, Guevara must show he was prejudiced by showing there exists a "reasonable probability" that "but for the alleged errors of his counsel, he would not have pleaded guilty." *Ecker*, 524 N.W.2d at 718.

The majority of ineffective-assistance-of-counsel claims are resolved by a determination that the first prong of the *Strickland* analysis has not been satisfied. As a

5

result, an analysis of the second prong is typically unnecessary. But in this case, the postconviction court determined that the first prong was met. As a result, we examine the record for evidence of prejudice to Guevara.

The postconviction court denied Guevara's petition to withdraw his plea based on Guevara's failure to show he was prejudiced by the advice. The postconviction court indicated in its order that "[t]he clearest way [Guevara] could show prejudice resulting from [the advice] would be to demonstrate that he has been or will be deported . . . due to [the constitutionally deficient advice] regarding the [immigration consequences of his plea]." The postconviction court stated that it was looking for a "direct causal connection between the instant criminal conviction and deportation" to satisfy the prejudice prong of Guevara's ineffective-assistance-of-counsel claim.

The proper inquiry is not whether the outcome of the trial would have been different but for the alleged errors of counsel. *See Berkow v. State*, 573 N.W.2d 91, 97 (Minn. 1997), *aff'd*, 583 N.W.2d 562 (Minn. 1998). The proper inquiry is whether a trial would have occurred. *Id.* "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Ecker*, 524 N.W.2d at 718 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). The supreme court has relied, at least in part, on the defendant's own testimony during the postconviction proceedings to make the determination. *Leake v. State*, 767 N.W.2d 5, 11 (Minn. 2009).

Thus, prejudice in this context does not refer to whether Guevara was actually subjected to immigration proceedings as a direct consequence of his conviction. The prejudice analysis only requires an inquiry into whether Guevara would have pleaded

6

guilty had he known the conviction would make his deportation presumptively mandatory.

While the record is somewhat thin on the prejudice prong, we conclude that it is sufficient to demonstrate prejudice to Guevara. The statute clearly stated that the domestic-violence conviction made deportation proceedings presumptively mandatory. It is undisputed that Guevara was not properly advised of this consequence. Guevara testified that if he had known of the significant immigration consequences, he would not have pleaded guilty. In addition, Guevara's immigration attorney provided an affidavit in which he stated that Guevara was the subject of removal proceedings after the conviction. On this record, we conclude that Guevara has demonstrated a reasonable probability that, but for his former attorney's deficient advice, he would not have accepted the plea.

**Reversed and remanded.**