*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1807**

State of Minnesota,
Respondent,

vs.

Larry Lee Hough,
Appellant.

**Filed May 23, 2016
Affirmed
Larkin, Judge**

Dakota County District Court
File No. 19HA-CR-12-1520

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Stacy St. George, Assistant County Attorney, Hastings, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jennifer Lauermann, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Hooten, Presiding Judge; Larkin, Judge; and Rodenberg, Judge.

**UNPUBLISHED OPINION**

**LARKIN**, Judge

Appellant challenges his conviction of second-degree criminal sexual conduct, arguing that his *Alford* plea was invalid because it was based on an insufficient factual basis and because he received ineffective assistance of counsel. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Larry Lee Hough with two counts of second-degree criminal sexual conduct. The complaint alleged that Hough babysat a kindergartner and, on more than one occasion, had the child "put lotion on his penis" in exchange for food.

During jury selection, Hough entered an *Alford* plea to one count of second-degree criminal sexual conduct. After Hough acknowledged waiver of his trial rights, his attorney said, "And you also understand that besides the ten years of supervised release, for that same ten-year period, you're going to be required to register with local law enforcement and the BCA?" Hough responded, "Yes." Hough then said, "I guess I don't really know what to register means." Hough had an off-the-record conversation with his attorney for approximately one minute, after which the hearing resumed.

Hough provided a factual basis for his plea through a colloquy with his attorney as follows:

> Q: Mr. Hough . . . is it correct that for a period of time in the
> year 2007, you were in the City of Apple Valley in Dakota
> County?
> A: Yes.

Q: And for a period of time during 2007, you were staying at a residence with an individual whose initials are J.H. . . . .
A: Yes.
Q: —is that correct?
A: Yes.
. . . .
Q: Okay. And at the time you were at this residence, J.H. was under the age of 13; is that correct?
A: Yes.
Q: And you were more than 36 months older than J.H. at the time; is that correct?
A: Yes.
Q: All right. And then you and I have gone over all of the police reports and the statements and everything that was done in terms of this investigation; is that correct?
A: Yes.
Q: Okay. So you've seen copies of J.H.'s statements to the child workers and . . . the police?
A: Yes.
Q: And you've seen—you've got a copy of the complaint?
A: Yes.
Q: Okay. So you factually know what J.H. is stating that you did?
A: Yes.
Q: Okay. And you would agree that based on the information contained in the police reports and the statements, if all that information was presented to a jury, whereas if J.H. was on the stand and repeated what she said to the child workers and to the police department, and if the other witnesses took the stand to say this is what J.H. said to them, and a jury heard all of that, you believe there's a substantial likelihood that you would be convicted of this offense; is that correct?
A: Yes.

After the colloquy, the district court stated: "[B]ased on your testimony here, I will accept your plea of guilty to count II."

Prior to sentencing, Hough discharged his attorney and moved to withdraw his plea, arguing that the plea was involuntary and that his attorney improperly induced him to plead guilty. The district court denied Hough's motion. The state nonetheless asked to

3

supplement the record supporting the plea, and the district court allowed the state to file the police reports that Hough referred to in his factual basis. Hough did not object.

The police reports contain a transcript of a child-protection worker's interview of J.H. During the interview, J.H. stated that Hough used to babysit her and her siblings when she was in kindergarten. J.H. explained that her mother would make food before she left. When J.H. asked Hough for something else to eat, Hough would make her put lotion on his penis with her hands in exchange for food. J.H. said that this happened more than once.

The police reports also contain a transcript of a statement from E.G., who was in jail with Hough for an unrelated matter. E.G. stated that Hough told him that when he babysat, J.H. was always "the complainer" about what her mother made for her to eat. Hough told E.G. that he found "a way to make her shut up." Hough said that he had J.H. "lotion my dick." E.G. stated that when he asked Hough if he was serious, Hough said "yeah," but "it was only a couple times."

The district court sentenced Hough to serve 120 months in prison and informed him that he would have to register as a predatory offender. The state dismissed the remaining count. Hough appealed to this court and requested a stay to pursue postconviction relief. This court granted the request and remanded for postconviction proceedings.

Hough petitioned for postconviction relief, requesting withdrawal of his *Alford* plea. He argued that his plea was inaccurate because it was based on an insufficient factual basis, and that it was involuntary and unintelligent because he received ineffective assistance of counsel. The postconviction court held a hearing and heard testimony from Hough and his attorney. Following the hearing, the postconviction court concluded that Hough's plea was

4

accurate, voluntary, and intelligent, and it denied his request for plea withdrawal. This court reinstated Hough's appeal.

## D E C I S I O N

"When a defendant initially files a direct appeal and then moves for a stay to pursue postconviction relief, [appellate courts] review the postconviction court's decisions using the same standard that we apply on direct appeal." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012).

The district court must allow plea withdrawal at any time "upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice exists if a guilty plea was not valid. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). To be valid, a guilty plea must be "accurate, voluntary and intelligent." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). "A defendant bears the burden of showing his plea was invalid." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). The validity of a plea is a question of law that we review de novo. *Id*.

## I.

Hough contends that his "guilty plea is invalid as inaccurate because it is based on an insufficient factual basis." "The main purpose of the accuracy requirement is to protect a defendant from pleading guilty to a more serious offense than he could be convicted of were he to insist on his right to trial." *State v. Trott*, 338 N.W.2d 248, 251 (Minn. 1983). "A proper factual basis must be established for a guilty plea to be accurate." *Ecker*, 524 N.W.2d at 716.

5

Hough pleaded guilty to second-degree criminal sexual conduct under Minn. Stat. § 609.343, subd. 1(a) (2006), which provides that

> A person who engages in sexual contact with another person is guilty of criminal sexual conduct in the second degree if any of the following circumstances exists:
> (a) the complainant is under 13 years of age and the actor is more than 36 months older than the complainant. Neither mistake as to the complainant's age nor consent to the act by the complainant is a defense. In a prosecution under this clause, the state is not required to prove that the sexual contact was coerced[.]

Sexual contact includes "the touching by the complainant of the actor's . . . intimate parts effected by a person in a position of authority, or by coercion, or by inducement if the complainant is under 13 years of age or mentally impaired." Minn. Stat. § 609.341, subd. 11(a)(ii) (2006).

A defendant "may plead guilty to an offense, even though the defendant maintains his or her innocence, if the defendant reasonably believes, and the record establishes, the state has sufficient evidence to obtain a conviction." *Ecker*, 524 N.W.2d at 716 (citing *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 167 (1970)). "[C]areful scrutiny of the factual basis for the plea is necessary within the context of an *Alford* plea because of the inherent conflict in pleading guilty while maintaining innocence." *Theis*, 742 N.W.2d at 648-49. An *Alford* plea is constitutionally acceptable when "the State demonstrate[s] a strong factual basis for the plea and the defendant clearly expresse[s] his desire to enter the plea based on his belief that the State's evidence would be sufficient to convict him." *Id*. at 647 (quotation omitted). A district court may accept an *Alford* plea "if the court, on the basis of its interrogation of the accused and its analysis of the factual basis offered in

support of the plea, reasonably concludes that there is evidence which would support a jury verdict of guilty and that the plea is voluntarily, knowingly, and understandingly entered."

*Id*. (quotation omitted).

The *Theis* court explained that

> [i]n the context of an *Alford* plea, our jurisprudence indicates that the better practice is for the factual basis to be based on evidence discussed with the defendant on the record at the plea hearing . . . . This discussion may occur through an interrogation of the defendant about the underlying conduct and the evidence that would likely be presented at trial; the introduction at the plea hearing of witness statements or other documents, or the presentation of abbreviated testimony from witnesses likely to testify at trial; or a stipulation by both parties to a factual statement in one or more documents submitted to the court at the plea hearing.

*Id*. at 649 (citations omitted).

The *Theis* court emphasized that

> the main purpose of the accuracy requirement of a valid plea is to protect a defendant from pleading guilty to a more serious offense than he could be convicted of were he to insist on his right to trial. Within the context of an *Alford* plea, where the defendant is maintaining his innocence, the defendant's acknowledgement that the State's evidence is sufficient to convict is critical to the court's ability to serve the protective purpose of the accuracy requirement. The best practice for ensuring this protection is to have the defendant specifically acknowledge on the record at the plea hearing that the evidence the State would likely offer against him is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty of the offense to which he is pleading guilty . . . .

*Id*. (quotation and citation omitted).

In *Theis*, the supreme court concluded that Theis's guilty plea was inaccurate because (1) "Theis did not acknowledge . . . that evidence described at the plea hearing

would be sufficient for a jury to find him guilty beyond a reasonable doubt of fifth-degree criminal sexual conduct"; (2) Theis's acknowledgment that he had read the charging statute did "not address any of the facts regarding the underlying criminal conduct" and "therefore [did] not provide a basis for the court to conclude that Theis was not pleading guilty to a crime that is a more serious offense than he could be convicted of at trial"; and (3) the "allegations of the complaint . . . [did] not satisfy the protective function of the accuracy requirement" because Theis "did nothing at the plea hearing to affirm that the evidence supporting these allegations would lead a jury to find him guilty" and "the record contain[ed] no other basis upon which the district court could make this conclusion in the face of Theis's claim of innocence." *Id.* at 650 (quotation omitted).

The factual basis in this case does not present any of the *Theis* deficiencies. First, Hough acknowledged that, if a jury heard the evidence that his attorney described at the plea hearing, there was a substantial likelihood that he would be convicted. Second, Hough's acknowledgment addressed the facts regarding the underlying criminal conduct. Hough acknowledged that he knew the contents of the complaint and the police reports, which described J.H.'s allegation of sexual contact by Hough. And Hough admitted that in 2007, he lived with J.H. in Dakota County, J.H. was under the age of 13, and he was more than 36 months older than J.H. Hough's acknowledgment and admissions provide a strong factual basis for Hough's plea.

Third, unlike the circumstances in *Theis*, the allegations in the complaint "satisfy the protective function of the accuracy requirement" because Hough affirmed that the evidence supporting the allegations would lead a jury to find him guilty. *See id.* Moreover,

8

police reports describing J.H.'s accusation are part of the record and support Hough's belief that a jury would find him guilty.[1]  *Cf. id.* (stating that "the record contains no other basis upon which the district court could make this conclusion [that a jury would find him guilty] in the face of Theis's claim of innocence").

Hough contends that the district court did not meet its obligation to ensure the plea was accurate because "the state did not file nor did the court note that it would accept the police reports [that Hough referred to in his plea] until well after the *Alford* plea was entered."  Hough therefore argues that "the court never made its own evaluation of the evidence to be offered at trial and whether a sufficient likelihood existed that [he] would be convicted at trial."  Hough notes that it is the district court's responsibility "to ensure that an adequate factual basis has been established in the record," *Ecker*, 524 N.W.2d at 716, and that "careful scrutiny of the factual basis for the plea is necessary within the context of an *Alford* plea because of the inherent conflict in pleading guilty while maintaining innocence," *Theis*, 742 N.W.2d at 648-49.  Hough argues that his plea is inaccurate and invalid because the district court did not carefully scrutinize the factual basis by reading the police reports before it accepted his plea.

We stress that it is important for the district court to comply with the safeguards set forth in *Ecker* and *Theis* when considering acceptance of an *Alford* plea.  However, "[i]f the factual basis of a guilty plea is challenged on direct appeal, this court conducts a *de novo* review by reviewing the record of the plea hearing, which should reveal the factual

---

[1] Hough does not assign error to the district court's post-plea receipt of the police reports.

9

basis." *State v. Johnson*, 867 N.W.2d 210, 216 (Minn. App. 2015), *review denied* (Minn. Sept. 29, 2015). In this case, the record of the plea hearing includes Hough's statements at the time of his plea, any documents received at the time of the plea, and the police reports received after acceptance of the plea. Our *de novo* review focuses on whether the record shows "a strong factual basis for the plea and [that] the defendant clearly expressed his desire to enter the plea based on his belief that the State's evidence would be sufficient to convict him." *Theis*, 742 N.W.2d at 647 (quotation omitted).

Once again, Hough's admissions, combined with his acknowledgment of J.H.'s accusation against him as set forth in the complaint and the police reports, establish a strong factual basis for his plea. Moreover, Hough acknowledged a substantial likelihood that a jury would convict him of the charged offense based on the evidence described in the complaint and police reports. We therefore conclude, *de novo*, that the record of the plea hearing reveals an adequate factual basis for Hough's *Alford* plea. Hough did not plead guilty to a more serious offense than he could have been convicted of had he gone to trial. Because Hough fails to establish that his plea was inaccurate and therefore invalid, he is not entitled to relief on this ground. *See Raleigh*, 778 N.W.2d at 94 ("A defendant bears the burden of showing his plea was invalid.").

## II.

Hough also contends that his "guilty plea is invalid as involuntary and unintelligent because he pleaded guilty based on ineffective assistance of counsel." "A defendant's guilty plea may be constitutionally invalid if the defendant received ineffective assistance of counsel." *Sames v. State*, 805 N.W.2d 565, 567 (Minn. App. 2011), *review denied*

10

(Minn. Dec. 21, 2011). To succeed on a claim of ineffective assistance of counsel, a defendant must show that his counsel's representation fell below an objective standard of reasonableness and that, but for the counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 2064, 2068 (1984). An appellate court "need not address both the performance and prejudice prongs if one is determinative." *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003). And "[t]he petitioner must overcome the presumption that counsel's performance fell within a wide range of reasonable representation." *Wright v. State*, 765 N.W.2d 85, 91 (Minn. 2009) (quotation omitted).

Hough argues that his trial counsel's representation fell below an objective standard of reasonableness because counsel failed to advise him that he would be subject to mandatory lifetime predatory-offender registration as a result of his conviction. But "[a] defendant need not be advised of *every* consequence for his plea to be intelligent." *Kaiser v. State*, 641 N.W.2d 900, 903 (Minn. 2002). And "'[i]gnorance of a collateral consequence does not entitle a criminal defendant to withdraw a guilty plea.'" *Id.* at 904 (quoting *Alanis v. State*, 583 N.W.2d 573, 578 (Minn. 1998)). In *Kaiser*, the supreme court explicitly held that "[t]he duty to register as a predatory offender is a regulatory rather than punitive consequence and therefore is a collateral consequence of [a defendant's] guilty plea," and thus "[f]ailure to advise [a defendant] of the registration requirement does not

11

make the plea unintelligent, and does not constitute a manifest injustice that mandates the withdrawal of his plea." *Id*. at 907.[2]

Hough also argues that his trial counsel's representation fell below an objective standard of reasonableness because counsel failed to pursue his defense in a diligent manner, specifically, that counsel failed to contact potentially favorable witnesses. Appellate courts "give trial counsel wide latitude to determine the best strategy for the client." *State v. Nicks*, 831 N.W.2d 493, 506 (Minn. 2013). Generally, the extent of any investigation and the calling of witnesses at trial is part of trial strategy and "should not be readily second-guessed." *Id*. Minnesota caselaw includes many examples of cases holding that an attorney's decision regarding which witnesses to call is unreviewable trial strategy. *See, e.g.*, *State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986) (stating that decisions about "[w]hich witnesses to call at trial and what information to present to the jury are questions that lie within the proper discretion of the trial counsel").

At the postconviction hearing, Hough's trial counsel testified that he visited Hough three times in prison before trial and that they discussed potential witnesses and what those witnesses might say. Counsel testified that Hough gave him a list of potential witnesses

---

[2] *Kaiser*, which relied on *Alanis*, remains binding authority even after *Padilla v. Kentucky*, 559 U.S. 356, 369, 130 S. Ct. 1473, 1483 (2010), which held that Padilla's counsel's performance was constitutionally deficient under the first prong of *Strickland* for failing to provide correct advice regarding the immigration consequences of his guilty plea. *See Sames*, 805 N.W.2d at 568-69 (deciding, after *Padilla*, that "[this court is] bound to follow the analytical framework of [*Alanis*], which relies on the distinction between direct . . . and collateral consequences," and that the "applicable caselaw requires [this court] to ask whether a particular consequence of a guilty plea is a direct . . . or a collateral consequence.").

and that he provided the list to his investigator, who tried to find them. Counsel testified that he decided not to subpoena one witness, T.G., based on a prior district court ruling. He further testified that he spoke to two other witnesses, K.G. and J.B., and disclosed the content of those conversations to the state. Hough's trial counsel also testified that he was prepared for trial and had a trial theory. The postconviction court found that Hough admitted that his trial counsel explained why certain testimony was not relevant and why that testimony would not be allowed at trial. This record does not suggest that trial counsel's decisions regarding which witnesses to pursue were anything other than unreviewable strategic decisions.

Lastly, Hough argues that his trial counsel's representation fell below an objective standard of reasonableness because counsel failed to explain the difference between the two offenses charged in the complaint. The record does not support Hough's argument. Hough's trial counsel testified that he and Hough discussed the two counts in the complaint and that based on his training and experience, he was confident that Hough understood the differences between count 1 and count 2, as well as the possible sentence for each count. Moreover, at the plea hearing, Hough acknowledged that he went over the plea petition with his attorney line by line. Hough further acknowledged that he signed the plea petition to indicate that he read it and understood it. The plea petition states: "I understand the charge(s) made against me in this case," "I feel that I have had sufficient time to discuss my case with my attorney," and "I am satisfied that my attorney has represented my interests and has fully advised me."

13

In sum, Hough has not demonstrated that his counsel's performance fell below an objective standard of reasonableness.  He therefore fails to show that his guilty plea was constitutionally invalid based on ineffective assistance of counsel, and he is not entitled to relief on this ground.  *See Raleigh*, 778 N.W.2d at 94 ("A defendant bears the burden of showing his plea was invalid.").

**Affirmed.**